## Edwards *v.* Hanyes-Walker Lumber Co.

### [74 South. 284, Division B.]

1. Master and Servant. *Injuries to servant. Safe place doctrine.*
   It is the duty of the master to furnish the servant a safe place to work, and this duty is nondelegable.

2. Master and Servant. *Injuries to servant. Fellow servant's negligence. Methods of work.*
   Where it was the duty of the servant to oil a mandrel at the noon hour while the mill was shut down, the master was not absolved from liability for injuries to the servant resulting from a premature starting of the machinery by a fellow servant, since an employer is no less responsible to his workman for personal injuries occasioned by a defective system of using machinery than for injuries caused by a defect in the machinery itself.

3. Master and Servant. *Injuries to servant. Safe place doctrine.*
   It is the universal law that a master must furnish his servant a safe place to work; that this duty is nondelegable, and a servant does not assume the risk when he works in an unsafe place.

4. Same.
   Where a servant was required to oil a bit saw mandrel during the noon hour when the machinery was at rest and who was injured by a foreman starting the machinery before one o'clock and without sounding the whistle as was the custom to do, in such case the master was liable.

Appeal from the circuit court of Tishomingo county. Hon. Claude Clayton, Judge.

Suit by J. W. Edwards against the Hanyes-Walker Lumber Company. From a judgment for defendant on a peremptory instruction, plaintiff appeals.

*James A. Cunningham,* for appellant.

This master owed to his employees all of the ordinary duties encumbent upon masters who operate dangerous machinery and they cannot evade this responsibility by entrusting the same to the judgment, care and management of an employee while they are away and engaged

in other and different matters.  *Taylor* v. *Bradford,* 83 Miss. 157; *Taylor* v. *Bradford,* 85 Miss. 409; 2 Thompson on Negligence (1 Ed.), pages 975 and 1029; 4 Thompson on Negligence (2 Ed.), sec. 4949-50-1-2; 4955-6-78; 4961-2; Especially White's Recent Supplement, Vol. 8 of Thompson on Negligence, secs. 4946 and 4956; 4 Labatt on Master and Servant (2 Ed.), sections 1466-7-70; also the same 1435; 3 Labatt (2 Ed.), section 905.

The issuance of orders in and about dangerous machinery is deemed to be official acts and bind the master although issued by an employee entrusted with management.  4 Labatt on Master and Servant, sec. 1470; 4 Thompson on Negligence (2 Ed.), sections 4324-5; 8 Thompson on Negligence (White's Supplement), sections 4946 and 4956.

When an employee is engaged in a matter about his master's business and not dangerous of itself, and the master creates a transitory danger by careless orders he is liable for the consequence to the employee, and the rule is the same whether he be present or represented by a vice.  4 Labatt on Master and Servant (2 Ed.), section 1471.

Injuries to servants through the sudden starting of dangerous machinery by the orders of the master of the person in charge whose orders are to be obeyed is a form of negligence that cannot be too highly condemned.  To support this view we cite 4 Thompson on Negligence (2 Ed.), section 4006 from which we quote the following to-wit: "It need not be said that where machinery is allowed by the master to run without warning to a servant who is engaged in repairing the machinery, and who has been led to believe by the master that it is at rest, whereby he is injured, it is due to the personal negligence of the master, and a servant may recover damages."

The notes under this section are copious and enlightening and amply sustain the author in his view.

*J. W. Lamb,* for appellee.

Now, by reference to the testimony offered by the appellant, it is clearly shown that the appellant was not

injured by the negligence of any foreman, nor was there any vice principal acting in the place of the principal. If the appellant was injured because of the negligence of any of the employees, it was because of the negligence of Arthur Hanyes, who was the sawyer, and a day laborer, just like the appellant. The mere alleging that a co-worker is a foreman, or vice principal, does not render the master liable for the negligence of a co-worker who is a mere fellow servant with the appellant, because the appellant alleges he is vice principal.

It is not disputed that if the appellant was injured by the negligence of a fellow servant, he cannot recover, and that the peremptory instruction was properly given. We will now refer to the court to what we conceive is the law applicable to the case, and apply the same to the facts in this case.

The controlling question in this case is, Were Arthur Hanyes, the sawyer, and the appellant, J. W. Edwards, fellow servants?

If the question is answered in the affirmative, there is at once an end to the contention, for it is apparent from the record in the case, that the injury complained of, resulted from the negligence of the sawyer, Arthur Hanyes, if it resulted at all from any negligence on the part of the employees of the appellees.

At the time of the injury both the appellant and the sawyer, Arthur Hanyes were engaged in the ordinary work of simple day laborers.

The leading case in this state, is the case of *Railroad Company* v. *Hughes,* 49 Miss. 252, and on page 282 the court says as follows: "The general principle which prevails in England, and in most of the American states, is, that a servant accepting employment for the performance of specified duties takes upon himself the natural and ordinary perils incumbent to the servants in the same common employment." *Lagrone* v. *M. & O. R. R. Co.,* 67 Miss. 597; *Railway Company* v. *Petty,* 67 Miss. 255; *N. O. Etc., R. R.* v. *Hughes,* 49 Miss. 258; *Howd* v. *M. C. R.*

*R. Co.,* 50 Miss. 178; *L. N. O. & T. Ry. Co.* v. *Petty, ante,* p. 255.

It seems to us that the rule announced in these decisions, as to when the fellow servant rule applied, and who are fellow-servants, is so plain that there can be no ground for discussion and that the appellant in this case, and the sawyer, come strictly within these rules, and the principle of law announced in these cases. *Givens* v. *Ry. Co.* 94 Miss. 855.

The appellant in this case was not injured because of any orders given him by Arthur Haynes, the sawyer, and ratified by Robin Haynes, the superintendent; and appellant was not injured because of his obedience or disobedience, to any order given him, by Arthur Haynes, but was injured by the negligence of Arthur Haynes, the sawyer, if the injury was caused by any negligence on the part of the employees.

We respectfully submit to the court that the record does not sustain the appellant when he contends that Arthur Haynes was the vice principal. 4 Labatt (2 Ed.), page 4143, sec. 1434; *Kimmer* v. *Webber,* 56 Am. St. Rep. 633; *Cullen* v. *Norton,* 126 N. Y. 1; *Hankins* v. *New York, etc., R. R. Co.,* 142 N. Y. 416, 40 Am. St. Rep. 616.''

Even if Arthur Haynes had the power to control his fellow workmen, in the absence of Robin Haynes, this fact does not make him a vice principal.. The general statement of the doctrine is laid down by 4 Labatt (2 Ed.), p. 4167, sec. 1441.

We respectfully submit to the court that any injuries appellant sustained, was because of the negligence of a co-worker and the record in this case shows this fact clearly and conclusively.

It was the duty of the court to say whether or not the employee was a vice principal. In this case the court did say, and said that the employee was not a vice principal. 4 Labatt, (2 Ed.), p. 4161, sec. 1437.

We respectfully submit to the court that the peremptory instruction given for the appellees was proper and that this case should be affirmed.

COOK, P. J., delivered the opinion of the court.

This suit originated in and was tried in the circuit court of Tishomingo county. According to the testimony of witnesses for plaintiff, he was an employee of the defendant company and his duties were that of a block setter; and it was his duty, among other things, to oil the bit saw mandrel. In order to perform his duties, it was necessary for him to take a position between the top saw rig and the big saw. The rule was that plaintiff's duties were to be performed at the noon hour, when the machinery was at rest. The regular custom was to put the machinery in motion at one o'clock. While the machinery was at rest, plaintiff's place to work was a perfectly safe place, but after the machinery was put in motion his place to work was a veritable death trap. In view of this fact, it was the custom to sound the whistle before the mill was started. On this occasion no whistle was sounded. While the plaintiff was in an extremely perilous position, and before the time to start the mill, and without giving the customary signal, the trap was sprung and plaintiff was injured; happily he was not killed. The court directed the jury to find for defendant.

It is earnestly argued by appellee that the company, a partnership, is not liable, because the proof showed that appellant was injured by the negligence of a fellow servant.

It will be observed from the statement of facts that the defendant had adopted a system designed to safeguard the lives and limbs of its employees. Some such system was necessary in order that the employee injured in this case might have a safe place to work. It was, of course, the duty of the master to furnish a safe place to work, and this duty was nondelegable. This is elementary

law, and it would be a waste of time to cite authorities to support the rule.

It would seem absurd to say that the master might escape liability, under the facts of this case, by merely saying that he had performed his duty in this case by directing the employee to oil the mandrel while the mill was shut down at the noon hour, and while the death-dealing apparatus was quiescent; that the premature starting of the machinery was the negligent act of a fellow servant for which the master was not liable. An employer "is no less responsible to his workmen for personal injuries occasioned by a defective system of using machinery than for injuries caused by a defect in the machinery itself," or, in other words, that "a master is responsible, in point of law, not only for a defect on his part in providing for his failure to see that the apparatus was properly used." Labatt's Master & Servant (2 Ed.), section 1110. The quotation was taken by Mr. Labatt from an English case, and the principle is developed in the succeeding pages of his masterly work.

It is the universal law that a master must furnish his servants a safe place to work; that this duty is nondelegable, and a servant does not assume the risk when he works in an unsafe place.

Returning now to the proven facts of the present case, it will be observed that the position of appellant when he was injured was only dangerous while the saws were revolving; and, when this was not the case, there was no need of any precautions for his safety. So he was not required to work in this place when the saws were in motion, but it was his job to oil the machinery while the mill was shut down. He was doing the work at the proper time and would have been entirely safe but for the foreman's disregard of the time. The custom was to do this work at recess while everything was safe. The custom was to start the mill at one o'clock. The mill was started before one o'clock. It was the nondelegable duty of the

master to see that the custom was carried out, in order that the place to work be made safe.

Many cases decided by this and other courts upon the established rule of the nonliability of the master for the negligence of a fellow servant of the complaining party are cited, none of which are, in our opinion, applicable to the facts of the present case.

There is also much discussion of the vice principal or superior servant doctrine but we do not think it is necessary to take either side of this controversy in the present case.

When it is kept in mind that the place where appellant was required to work was only safe while the machinery was not in motion, it will be perceived that appellee had not provided a safe place if he failed to adopt some system to insure that the machinery would not be started while appellant was at work. This failure of the system was the fault of the master, for the obvious reason that he could not hide behind the skirts of a fellow servant when it was his positive and nondelegable duty to keep the place safe, and see to it that his apparatus was properly used.

We think that the principle discussed is the principle which controlled this court in *Oil Co.* v. *Ellis,* 72 Miss. 191, 17 So. 214.

We have not discussed the fellow-servant rule, because we do not believe that this rule has any application to this case. There is no question about the fellow-servant doctrine in this state. It is in full flower, except in that class of cases which come within the exceptions prescribed by our Constitution or statutes.

*Reversed and remanded.*

STEVENS, J., took no part in this decision.