BENTON *v*. FINKBINE LUMBER COMPANY ET AL.

[79 South. 346, Division A.]

1. MASTER AND SERVANT. *Injuries to servant. Safe place to work.*
   It is a nondelegable duty of the master to furnish the servant with a reasonably safe place in which to work, and it is his further duty to maintain the place as a reasonably safe one.

2. MASTER AND SERVANT. *Injuries to servant. Pleading. Safe place to work.*
   In a suit for the death of a servant, a declaration which charges that the work in which the servant was engaged, because cf

the manner in which it was being done, was extra hazardous; that the defendants all knew this fact, and that the deceased did not; that the defendants failed to take reasonable and proper precautions for the safety of the deceased and thereby failed to furnish him a reasonably safe place in which to work. stated a good cause of action and was not demurrable.

Appeal from the circuit court of Simpson County.
Hon. W. H. Hughes, Judge.
Suit by L. A. Benton against the Finkbine Lumber Company and others for wrongful death. From a judgment for defendants on demurrer to the declaration, plaintiff appeals.
The facts are fully stated in the opinion of the court.

*Hirsh, Dent & Landau,* for appellant.

The defendants in this case are sued as joint tort-feasors. This court held in numerous cases that this can be done. *Bright* v. *Finkbine Lumber Company,* 77 So. 316; *Bailey* v. *Power Company,* 86 Miss., 634; *Harris* v. *I. C. R. R.,* 85 Miss., 15.

Federal court held declaration stated. A joint cause of action. This case was thoroughly briefed and argued in the federal court, and the federal judge, in remanding the cause to the state court for the trial, referred, amoung others, to the following cases: *Chesapeake & Ohio Railroad* v. *Dixon,* 179 U. S. 131. This case holds: *Buchanan* v. *Ritter Lumber Company et al,* 210 Fed. 144; *Galeotti et al* v. *Diamond Match Co., et al,* 178 Fed. 127.

Strange as it may seem, the trial judge held, not that the declaration failed to state a point cause of action, but that no cause of action, whatever was set forth, sustained the demurrer and finally dismissed the cause.

This court has held in every case we can find relating to the subject, that if a declaration in any court, whether one or more, states a good cause of action, a general demurrer should be overruled. *Sevey* v.

*Dyers,* 51 Miss. 501; *Hines* v. *Patts,* 56 Miss. 346; *Alexander* v. *Western Union Telegraph Co.,* 66 Miss., 161; *Cummings* v. *Dougherty,* 73 Miss. 405; *Washington* v. *Soria,* 73 Miss. 665; *Lynn* v. *Railroad,* 63 Miss. 157; *State Board of Education* v. *Railroad,* 71 Miss. 500; *Jacobs* v. *Postal Telegraph Co.,* 76 Miss. 278; *Thompson* v. *Winona,* 96 Miss. 591.

Facts alleged in declaration admitted. A general demurrer admits all the facts alleged in the pleading demurred to. *Delano* v. *Holly-Mathews Mfg. Co.,* 47 So. 475; *Knox* v. *Exporters Cotton Oil Company,* 56 So. 185; *Globe & Rutgers Fire Insurance Co.* v. *Fireman's Insurance Co.,* 97 Miss. 148; *Carrero* v. *Wright,* 93 Miss. 306; *Delano* v. *Mfg. Co.,* 47 So. 475.

Declaration sufficient. Duty of defendants to promulgate and enforce rules relative to hazardous business. We desire to direct this court's attention to the well considered case of *Potlatch Lumber Company* v. *Anderson,* from the circuit court of appeals, Ninth circuit, October, 1912, 199 Fed. 742; *Gillett* v. *Lumber Company,* 12 Neg. & Compensation Cases, 812; Second Edition, Vol. 4, Labatt's Master & Servant, 4308, 4309, 4310.

Safe place to work must be maintained by having and enforcing reasonable rules relative thereto. It is elementary law that it is the nondelegable, duty of the master to furnish the servant a safe place to work. *Edwards* v. *Lumber Company,* 113 Miss. 378; *Finkbine Lumber Company,* v. *Cunningham,* 47 So. 916; *Lucey* v. *Stack-Gibbs Lumber Company,* 131 Pac. 897, 46 L. R. A (N. S.) 86.

Under these authorities and indeed under all the authorities on which this action is based, we submit, that the declaration herein states a good cause of action and that it was error for the court below to sustain the demurrer.

Counsel in the court below referred to the case of *I. C. R. R. Co.,* v. *Abrams,* 84 Miss. 456. With all due deference and respect to learned counsel for appellees, this case has no application to the pleadings of the case at bar. No contract is alleged between the appellant and appellees. The action is based entirely in tort.

Section 729, Code 1906, is as follows: ''The declaration shall contain a statement of the facts constituting the cause of action, in ordinary and concise language, without repetition; and if it contain sufficient matter of substance for the court to proceed upon the merits of the cause, it shall be sufficient; and it shall not be an objection to maintaining any action that the form thereof should have been different.''

We submit in all candor and seriousness that the declaration in this case under the foregoing section or any other rule of pleading, states a substantial cause of action. Indeed, every count states a good cause of action under any rule of pleading, and therefore, it was error for the court below to sustain the demurrer and dismiss said cause.

The case, therefore, should be reversed and remanded.

*Wells, May & Sanders,* for appellee.

No new question is presented for determination by this appeal. In fact, every contention here presented was earnestly, ably and exhaustively argued by counsel for appellant. McDonald & Marshall and Mize & Mize in the case of *Leonard Cuefas, by next friend,* v. *Ingram Day Lumber Company,* No. 16,627, which the court disposed of adversely to this appellant's contentions without a written opinion.

The safe-place doctrine has been so clearly defined and so well settled by the many decisions of this honorable court, and the court is so perfectly familiar with its own declarations, we deem it unnecessary to refer specifically to any of these innumerable cases.

However, the rule announced in varying forms in at least a dozen cases, decided by this honorable court may be epitomized as follows:

The master owes his servants the non-delegable duty of exercising reasonable care to provide and maintain for his servant a reasonably safe place in which to work. Mr. Labatt in his work on Master and Servant, volume 1, pp. 7, 14, sections 6, 11, 26 Cyc. 1113; *Byrd* v. *Thompson,* 91 S. E. 100; *Iams* v. *Hazel-Atlas Glass Company,* 251 Penn. 439; *Sloss-Sheffield Steel & Iron Company* v. *Terry,* 67 So. 678; *Shields* v. *Bergendahl-Bass Engineering & Const. Co.,* 187; Ill. App. 5; *Eagle Coal Company* v. *Patrick's Admr.,* 170 S. W. 948, 161 Ky. 413; *Cooney* v. *Laclede Gaslight Company,* 171 S. W. 572, 186 Mo. App. 156; *Horton & Horton* v. *Hartley,* 170 S. W. 1046; *Losasse* v. *Jones Bros. Co.,* 93 Am. 266; *Cowart* v. *Southern Marble Company,* 87 S. E. 282, 144 Ga. 254; *Upchurch* v. *Culpepper,* 87 S. E. 834; *Brooks* v. *Central Coal & Coke Company,* 152 S. W. 616, 96 Kan. 530; *San Antonio Brewing Association* v. *Sievert,* 182 S. W. 389; *Kreigh* v. *Westinghouse,* 214 U. S. 255, 256, 29 Sup. Ct. 621, 53 L. Ed. 984; *Baltimore & Potomac R. R. Co.* v. *Mackey,* 157 U. S. 15, Sup. Ct. 491, 39 L. Ed. 624; *Union Pacific R. R. Co.* v. *O'Brien,* 161 U. S. 451, 16 Sup. Ct. 618, 40 L. Ed. 766; *Choctaw, Oklahoma, etc., R. R. Co.* v. *McDade,* 191 U. S. 62, 24 Sup. Ct. 24, 48 L. Ed. 95; *Choctaw Oklahoma, etc., R. R. Co.* v. *McDade,* 191 U. S. 64, 68, 24 Sup. Ct. 24, 48 L. Ed. 96; *Armour* v. *Hohn,* 111 U. S. 313, 4 Sup. Ct. 251, 51 N. E. 1021; *Ocean Steamship Company* v. *Cheeney,* 86 Ga. 278, 284, 12 S. E. 351.

It seems useless to multiply authorities touching a question which has been definitely decided by the supreme court. The case of *Standard Oil Co.* v. *Brown,* 218 U. S. 78, 30 Sup. Ct. 669, L. Ed. 939, relied upon by the appellee, is thought not to be in point. *Foss* v.

*Vaker*, 62 N. H. 247, 251; *Northern, etc., R. R. Co.* v. *Peterson*, 162 U. S. 346, 353, 16 Sup. Ct. 843; *Fifield* v. *Northern R. R. Co.*, 42 N. H. 225, 238; *Harms* v. *Sullivan*, 1 Ill. App. (1 Bradw.) 251; *Hehoe* v. *Allen*, 92 Mich. 464, 52, N. W. 740, 31 Am. St. Rep. 608; *Hefferen* v. *Northern Pac. R. Co.*, 45 Minn. 471, 48 N. W. 1, 526; *Ling* v. *St. Paul, M.. & M. Ry. Co.*, 50 Minn. 160, 52, N. W. 378; *Kenny* v. *Cunard S. S. Co.*, 55 N. Y. Super. Ct. 23 Jones & S. 558; *Prescott* v. *Ball Engine Co.*, 176 Pa. 459, 35 Atl. 224, 53 Am. St. Rep. 68; *Keith* v. *Walker Iron & Coal Co.*, 81 Ga. 49, 12 Am. St. Rep. 296.

Where a master provides a safe place for work, it is the duty of the servant, by attention to details or arrangement and execution, to guard against in security; and if a servant is injured by neglect of such details, no matter by whom, the negligence is that of a fellow-servant. *Georgegan* v. *Atlas, S. S. Co.*, 3 Miss. 224, 22 N. Y. Supp. 749; *Ewald* v. *Chicago & N. W. Ry. Co.* 70 Wis. 36, 12 N. W. 591, 5 Am. St. Rep. 178; *The Louisiana*, 74 Fed. 748, 41 U. S. App. 324; *Harty* v. *Cromwell S. S. Co., The Victoria*, 13 Fed. 43, followed; *Baron* v. *Detroit & C. Steam Nav. Co.*, 91 Mich. 585, 52 N. W. 22; *Filbert* v. *Delaware & H. Canal Co.*, 121 N. Y. 207, 23 N. E. 1104, reversing (1888) 56 N. Y. Sup. Ct. (24 Jones & S.) 170, 2 N. Y. Supp. 623; *McCoy* v. *Empire Warehouse Co.*, City Ct. Brook, 10 N. Y. Supp. 99; *Pawling* v. *Hoskins*, 132, Pa. 817, 25 Wkly. Notes Cas. 443; *Jacques* v. *Miami Ice & Cold Storage Co.*, 75 So. 788.

We believe the authorities cited above, with thousands of others which could be cited, thoroughly demonstrate the unsoundness of the contention that the safe-place doctrine applies to the facts stated in the plaintiff's declaration. We will now give the court the benefit of the cases that specifically hold that liability cannot be predicated of the facts depended

upon in this case. *Anderson* v. *Columbia Improvement Company,* 2 L. R. A. (N. S.) 840. See Thomp. Neg., sections 4060-4063, 4068; 1 Labatt, Mast. Ser., sections 237-239; 1 Shearm. & Redf. Leg., sections 180, 185.

The only case at all similar to *Anderson* v. *Columbia Improvement Company,* which a careful search has discovered in *Melton* v. *E. E. Jackson Lumber Company Ala.,* 580, 31 So. 848. In this case it was held that a servant who is a deaf mute cannot maintain an action against his master for personal injuries inflicted by the falling of a tree which other servants cut while clearing a right of way for a railroad, which fell upon him while he was shoveling dirt on the side of the right of way; the dangers incident to the felling of trees being perfectly obvious, and such work having been carried on for several days where he was employed. *Melton* v. *Jackson Lumber Company* 31 So. p. 848; *Hagins* v. *Southern Bell Telephone Co.,* 20 Am. & Eng. Ann. Cases, p. 248; *Anderson* v. *Columbia Imp. Co.,* 41 Wash. 83, 82 Pac. 1037, 2 L. R. A. (N. S.) 840; and authorities cited in note; *Melton* v. *E. E. Jackson Lumber Company,* 133 Ala. 580, 31 So. 848; *Allen* v. *Augusta Factory,* 83 Ga. 76, 8 S. E. 68; *Holland* v. *Durham Coal Co.,* 131 Ga. 715, 63 S. E. 290; *Moore* v. *Dublin Cotton Oil Mills,* 127 Ga. 609, 56 S. E. 839, 10 L. R. A. (N. S. 772; *Dennis* v. *J. S. Schofield's Sons Co.,* 1 Ga. App. 489, 57; C. S. E. 925; *Melton* v. *E. E. Jackson Lumber Company,* 133 Ala. 580, 31 So. 848; *Grayson-McLeod Lumber Co.* v. *Carter,* 76 Ark. 69, 88 S. W. 597; *Richards* v. *Riverside Iron Works,* 56 W. Va. 510, 49 S. E. 437.''

The only case cited in the brief for appellant in the seeming conflict with the case last above cited in *Potlatch Lumber Company* v. *Anderson* 199 Fed. 742, decided by the circuit court of appeals, ninth circuit, October 7, 1912, and to show that this case is inapplicable to the facts stated in appellant's declaration

herein, it is only necessary to examine the statement of facts in the Potlatch Lumber Company's case.

That the ninth circuit has not announced a rule contrary to the Anderson case is evidenced by its decision rendered May 4, 1914, in a case against the same defendant, in the case of *Woods* v. *Potlatch Lumber Company,* 213, Federal Rep. 591, in which the rule was thus stated, according to the syllabus:

"1. Master and servant (S. S. 196). Injuries to fellow-servant. Fellow-servants. Plaintiff who had been employed by defendant in the operation of a sawmill to perform various duties, was directed to assist in making repairs in the brick-work about the base of a refuse burner, and while so engaged was injured by a piece of timber thrown from the conveyor attached to the burner through the negligence of F, who with two assistants had just completed the installation of a new sprocket wheel at the top of the conveyor. F was in immediate charge of the wheel, and another was in charge of the brickwork, but both were subordinate to H, who was a foreman inferior to the superintendant, who in turn was subject to the orders of the general manager. *Held,* that plaintiff and F were fellow-servants at common law. (Ed. Note—for other cases, see Master and Servant, Cent. Dig. sections 374, 378, 486-488; Dec. Dig. section 196.

Who are fellow servants? see notes to *Northern Pac. R. Co.* v. *Smith, S. C. C. A.* 668; *Flippin* v. *Kimball,* 31 C. C. A. 286.

"2. Master and servant (Sections 107). Injuries to servants. Dangerous place. Where the place where plaintiff was employed was not dangerous or defective immediately before the accident, in which he was injured by being struck, by timber negligently thrown from a sawmill refuse conveyor to the ground, by plaintiff's fellow-servant, and the throwing of the timber would not have been dangerous had care been exer-

cised to warn persons who might be below or to see
that no one was below, defendant was not negligent
in failing to provide plaintiff a safe place to work.
(Ed. Note—for other cases, see Master and Servant,
Cent. Dig., sections 199-202, 212, 254, 255; Dec. Dig.,
section 107.

"3" Master and servant (Section 141). Injuries to
servant. Manner of Work. Duty to prescribe.   The
rule that a master is required to prescribe the manner
in which work committed to servants shall be per-
formed extends only to services of a complicated and
dangerous character, requiring skill and experience,
and has no application to the taking down of a scaf-
fold used to install a new sprocket wheel in a refuse
conveyor in a sawmill, involving the lowering of tim-
bers from the scaffold to the ground.  (Ed. Note—for
other cases, see Master and Servant, Cent. Dig., section
283; Dec Dig., section 141; *Deviny* v. *Planters Oil Mill,*
33 So. 492.

If the act of the servant rendered the place of work
unsafe, the master is not liable.  *Yazoo & Mississippi
Valley R. R. Co.* v. *Perkins* (Miss.), p. 66, So. 273.

If the servant does the work in negligent fashion and
is thereby injured, the master is not liable therefor.
*Ten Mile Lumber Company* v. *Easter Garner,* No. 21079,
decided by division B. of this Honorable Court, June 3,
1918; *Cumberland Tel. & Tel. Co.* v. *Cosnahen,* 105 Miss.
615, 62 So. 824; *Truly* v. *Natchez Lumber Co.,* 83 Miss.
430, 36 So. 4; *Railroad Company* v. *Woodruf,* 53 So.
687; *Morehead* v. *Railroad Company,* 84 Miss. 112;
*Ragland* v. *Native Lumber Co.,* 78 So. 542; *Edwards
Haynes-Walker Lumber Company,* 74 So. 284; *Horton*
v. *Lincoln County,* 77 So. 796.

In veiw of the fact that no new question is presented
by this appeal as was evidenced by the failure of Chief
Justice Smith to write an opinion in the Cuevas case,
we feel that we should apologize for the vain parade of

authorities, herein collated, and for protracting this discussion. We have only been influenced to do this in the hope of saving the court some research and investigation if it should conclude to write an opinion in this case.

We respectfully submit that the judgment of the circuit court was proper, and should be affirmed.

SYKES, J., delivered the opinion of the court.

The appellant, plaintiff in the court below, filed suit against the Finkbine Lumber Company and certain of its officers for damages for the negligent killing of his son. The declaration contains four counts which practically charge in different language the same cause of action. A demurrer was sustained to the declaration and judgment entered, from which judgment this appeal was prosecuted.

The first count of the declaration and the grounds of the demurrer sustained to it are copied in full, and read as follows:

"L. A. Benton, plaintiff, by his attorneys, brings this, his cause of action, against the Finkbine Lumber Company, J. D. Alexander, J. C. Lovette, and L. L. Ryder, defendants herein, and asks judgment against the said defendants in the sum of fifty thousand dollars and all costs in this behalf expended. Plaintiff avers that his cause of action against the said defendants is this, to wit:

"The said defendant the Finkbine Lumber Company was, on or about the 31st day of July, 1916, and still is, a corporation engaged in operating and carrying on a large saw mill and timber business, located in the town of D'Lo, Simpson county, Miss., and in cutting and manufacturing timber and trees into lumber; that said defendant, on said date, owned and operated, in connection with said mill, a railroad, log road, or

dummy line, for the purpose of hauling logs and lumber to and from its mill, and it operated on said line of railroad, and still operates thereon, engines and trains of cars propelled by the powerful and dangerous agency of steam; that on or about the said date Spurgeon Benton, an adult unmarried son of the plaintiff, was engaged and employed by said Finkbine Lumber Company as a timber cutter to cut down standing timber for said company, and he was then and there employed by said company to work for it in said capacity in company with a large number of other workmen known as timber cutters; that said Alexander and Ryder, resident citizens of Simpson county, Miss., the said Lovette, a resident citizen of Rankin county, Miss., were then and there employed by said defendant the Finkbine Lumber Company, the said Alexander being the local general manager of said company, and the said L. L. Ryder being the general woods foreman or superintendent of the woods, and the said Lovette being the woods foreman or 'straw boss' of the timber cutting crew, in which said Spurgeon Benton was working, as will hereinafter appear; that the timber gang in which said Spurgeon Benton was directed to work was under the immediate management and control of said Lovette, he being then and there, by virtue of his employment with said company, vested with the power and authority to supervise and direct the labors of said Spurgeon Benton and the other timber cutters; that the said defendants Alexander, Ryder, and Lovette were then and there employed by said company to supervise and direct, and did supervise and direct, generally, all of the work of the defendant company, and particularly the work of the said Spurgeon Benton and the other timber cutters; that the said Alexander, Ryder, and Lovette, acting for and on behalf of said company, as aforesaid, were then and there the superior officers of the said Spurgeon Benton, and the other

members of the gang with which he, the said Benton, was working.

"Plaintiff avers that on or about, to wit, the 31st day of July, 1916, said Spurgeon Benton, acting under his said employment as timber cutter with said·company, in Company with said gang of timber cutters, was sent and directed by defendants to go to certain lands upon which was standing timber for the purpose of cutting down said timber for said company. Said Spurgeon Benton, together with said gang of timber cutters, did, under his employment with said lumber company, go in said capacity on said lands for the purpose of cutting said timber on said date, the said defendant Lovette being then and there present upon the site of said timber directing how it should be cut, and acting under and in pursuance of his employment, as aforesaid, with said lumber company, as the superior officer and one of the directors of the labors of the said Spurgeon Benton and the said gang of timber cutters, the said timber to be cut for said company by said timber cutters under their employment with said company; that said timber was a regular pine forest, the timber therein was then and there standing and was very tall, each tree being from sixty to one hundred feet long, and the trees were close together and thickly situated, one near the other, and there was a thick undergrowth, or many small trees growing under, around, and near said pine trees which were being cut.

"Plaintiff avers that the said Alexander, Ryder, and Lovette, the superior officers of the said Spurgeon Benton, as aforesaid, and under their and the said Spurgeon Benton's employment with said company, did order said Spurgeon Benton to go, and he, in pursuance of and in compliance with said order, given as aforesaid, in furtherance of his said service to said lumber company, did go, with other members of the gang, to the said timber, and in compliance with said orders began cutting down said timber, and he, the said Lov-

ette, then and there directing the said Spurgeon Benton where he, the said Spurgeon Benton and the other timber cutters, should cut, under his and their employment with said lumber company.

"Plaintiff further alleges that said Lovette, acting as the superior officer of the said Spurgeon Benton and the said timber cutters, under his and their said employment with said lumber company, did negligently, unlawfully, and willfully disregard the safety of the said Spurgeon Benton and the other timber cutters in said gang, and did negligently cause said timber, or a tree thereof, to be cut down and upon said Spurgeon Benton and kill him. Said defendants did then and there negligently order and direct all of said timbers to be cut on the same side of said body of timber in narrow drift, or strip, near the railroad track of the said defendant company, so that said timber could be quickly loaded on cars on the railroad tracks of the said company. The said Lovette negligently ordered and directed all of said timber cutters to cut together and near each other, that is to say, cut almost in the same gang or squad, said timber on one side of said forest, when he (Lovette) knew that cutting timber in this way was highly dangerous, and that felling said timber by such a great number of employees working around and near each other made the place where the timber cutters were situated highly dangerous, and that the said Spurgeon Benton and other timber cutters in said forest would likely be injured by said timber as it was falling; that said Spurgeon Benton and the other timber cutters working together and near each other were placed in this highly dangerous position by the orders of said defendants, and this place was known to said defendants to be an unsafe place, and an unfit place for such a great number of timber cutters, to-wit, about twenty in number, to work in such narrow drifts, or strips, so each other; that two members of the gang cutting together were required to fell a tree, and every time a

tree would fall there was great danger to the other timber cutters within the reach of the fall of the tree, or trees, in said narrow drifts, or strips, in which said timber cutters were required to cut. This danger in cutting trees with such a large number of men together, all cutting so near each other, in such strips as were designated by the defendants, was highly dangerous, and not reasonably safe to the said Spurgeon Benton and the other timber cutters so engaged. Plaintiff avers that it was necessary to have, in order to make the place in which the said Spurgeon Benton and other timber cutters were placed a reasonably safe place for such work as they were required to do, a watchman or party present in this constant attendance to give notice of this constant recurring danger produced by the fall of the trees, so that said timber cutters, and each of them, could protect themselves from the constant recurring danger as foresaid; said Spurgeon Benton having been placed to cut said timber with all of said timber cutters in one squad so near each other in said narrow drifts, or strips, by and under the direction of his superior officers, as aforesaid, it was the duty of said superior officers, and of the defendant company, to give him, the said Spurgeon Benton, and other timber cutters, reasonable notice of the recurring danger produced by the fall of the trees, as aforesaid, so that they could go to a place of safety as the trees fell; that, notwithstanding the fact that it was all of said defendants' duty to see that said notice was given, however, the said defendants permitted the other timber cutters in said gang to cut down a tree upon the said Spurgeon Benton, and kill him, without giving him the slightest notice that a tree was falling, and would fall on him if he did not stop his work and go to a place of safety; that the said Spurgeon Benton did not see and was not aware of the said danger at the time he was killed, and was not apprised or warned of said danger by the defendants herein, or any of

them; that said Spurgeon Benton, at the time he was killed, was in the active service of said defendant company, engaged in his work in cutting down a tree in close proximity to all the other timber cutters, and he was not in a position to know, and could not know while thus engaged, when danger would recur from the fall of any or all of the trees being cut so near him by the other timber cutters. Plaintiff therefore alleges that said defendants were negligent and acted in willful disregard of the said Spurgeon Benton's safety, placed as aforesaid, when they and each of them directed and permitted all of the timber cutters to cut all at once, so near each other, in said line, in a thick clump of timber, in such a manner that said timber was likely to, and would, fall on the said timber cutters, and particularly the said Spurgeon Benton, situated as he was. Plaintiff avers that it was the duty of the said defendant company, and of the said Alexander, Ryder, and Lovette, officers and vice principals of the said defendant company, to form reasonable rules and regulations with reference to the cutting of said timber, and with reference to the placing of said gang of timber cutters, and with reference to giving notice of the dangers incident to the falling timber, and to have a reasonable safe place in which the said timber cutters might work, and particularly the said Spurgeon Benton.

"Plaintiff avers that the said death of the said Spurgeon Benton was proximately and directly caused by the combined and concurrent gross negligence, carelessness, and misconduct of the said defendants, the said Finkbine Lumber Company and the said Alexander, Ryder, and Lovette, in that they and each of them were negligent in not placing the said Spurgeon Benton in a drift or strip wide enough for him to be out of the reach and danger of the falling timber from other drifts, and in a reasonably safe place to work, and in not warning him of the dangers necessarily incident thereto, and that as a proximate

result of the said defendant's concurrent negligence in directing and having his work in said unsafe place, as aforesaid, the Spurgeon Benton was killed by a falling tree cut by one or more of the said timber cutters, who were cutting trees a short distance from him, the said Spurgeon Benton, to-wit, eighty or ninety feet.

"Plaintiff avers that at the time the said Spurgeon Benton was negligently killed he was a stout, vigorous, able-bodied man, earning fifty dollars per month, and from this sum he contributed largely to the support of the plaintiff and the other parties interested herein; that said Spurgeon Benton left surviving him L. A. Benton, his father, Mrs. L. A. Benton, his mother, and Maudie Benton, his sister, who are alone entitled to a recovery herein, for all of whom the plaintiff files this suit, and says that he and his wife, Mrs. L. A. Benton, and daughter, Maudie Benton, have been damaged by the said conjoint, concurrent negligent acts of the said defendants, as hereinbefore set forth, in the sum of fifty thousand dollars, for which he sues and demands judgment."

The grounds of demurrer are:

"(1) Said declaration is obnoxious to the objection of duplicity, in that said declaration has attempted to aver therein against the defendants an action *in contractu* and an alleged cause of action *in delicto.*

"(2) Said declaration is further obnoxious to the objection of duplicity is that in all of the courts thereof separate, distinct, and inconsistent grounds of action are alleged.

"(3) Said declaration fails to allege a cause of action against the defendants therein.

"(4) Said declaration is so vague, uncertain, indefinite, and prolix that the defendants therein are unable to plead thereto and raise proper and definite issues of facts."

The only serious question presented to this court for consideration is whether or not the declaration

states a cause of action against these defendants, or any one of them. The declaration states facts which show that the work in which the plaintiff was engaged was of a hazardous character, that the master could have provided warnings when the trees were about to fall, which in all probability would have protected the plaintiff from injury, and that he failed to do so.

It is elementary law that it is a nondelegable duty of the master to furnish the servant with a reasonably safe place in which to work, and that it is his further duty to maintain the place as a reasonably safe one. *Edwards* v. *Lumber Co.*, 113 Miss. 378, 74 So. 284; *Lumber Co.* v. *Cunningham,* 101 Miss. 292, 57 So. 916; *Lucey* v. *Stack-Gibbs Lumber Co.,* 23 Idaho, 628, 131 Pac. 897, 46 L. R. A. (N. S.) 86; *Potlatch Lumber Co.* v. *Anderson,* 199 Fed. 742, 118 C. C. A. 180. In the case in 46 L. R. A. (N. S.) 86, in an extensive note fully discussing this question.

The declaration states facts which show that the deceased was acting under the direction of an immediate superior; that the work in which he was engaged, because of the manner in which it was being done, was extrahazardous; that the defendants all knew this fact, and that the deceased did not; that the defendants failed to take reasonable and proper precautions for the safety of the plaintiff, and thereby failed to furnish him a reasonably safe place in which to work. The court erred in sustaining the demurrer to the declaration under the above-cited authorities.

There is no merit in, and for this reason it is unnecessary to consider, any of the other grounds mentioned in the demurrer.

*Reversed and remanded.*