MASONITE CORPORATION *v.* LOCHRIDGE.

(Division B. March 14, 1932. Suggestion of Error overruled May 9, 1932.)

[140 So. 223. No. 29879.]

(Division B. May 9, 1932.)

Gilbert & Cameron, of Meridian, and Welch & Cooper, of Laurel, for appellant.

Gilbert & Cameron, of Meridian, for appellant.

Collins & Collins, of Laurel, for appellee.

**F. B. Collins,** of Laurel, for appellee.

Argued orally by **Ellis B. Cooper**, for appellant, and by **Jeff Collins**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellee brought this action against appellant in the circuit court of Jones county to recover damages for an injury received by him while in the employ of appellant, alleged to have been caused by appellant's negligence in failing to furnish appellee a reasonably safe place to work, and in furnishing him a defective electric switch to install. He recovered a judgment in the sum of twenty thousand dollars. From that judgment appellant prosecutes this appeal.

Appellee received into his body, while in the performance of his duties as an employee of appellant, an electric current which seriously and permanently injured him. There were deep flesh burns in several places, and the flesh was burned off his left shoulder and the bone charred. He was in a hospital for five weeks, and for months suffered great physical and mental pain.

Appellant was engaged in the manufacture of Masonite boards. These boards are made of wood pulp and are used for building materials. For sawing the boards into sizes the appellant used a machine consisting of two circular saws built into a table. This table was about five feet wide and longer, and three and one-half feet high. It was made up of cast-iron frame and legs, and the top was of wooden boards. The circular saws protruded through the top of the table and were pulled by two five horse power electric motors mounted on a frame below the table. The electricity to the motors passed through a flexible conduit to the two magnetic switches. The work of installing this piece of machinery was done by one of appellant's employees, Virgil Brown, assisted by a man named Green. They were engaged in the work

during Friday, Saturday, and probably part of Sunday preceding Monday, July 8, 1929. Appellee belonged to appellant's crew of expert electricians. While this piece of machinery was being installed, appellee was in the state of Alabama. He left Laurel for Alabama on Friday, July 5th, and returned on the following Sunday afternoon, July 7th, and was injured around ten o'clock on Monday, July 8th. On Monday morning, July 8th, the machine was turned over to appellant's operating department and was operated for something like one-half hour. J. C. Giles was the superintendent of appellant's electrical crew and had charge and control of the installation of this machine, but the actual work of installation was done by Brown and his assistant, Green, under Giles' directions and superintendence. After the machine had been turned over to the operating department and operated a short while on Monday morning, Brown informed Giles that the two magnetic switches constituting a part of the machine were insufficient in voltage, the capacity of each of these machines was only two hundred fifty volts; thereupon Giles instructed appellee and V. C. Love, one of appellant's electrical crew, to remove the two two-hundred-fifty-volt magnetic switches and install in their places two five-hundred-fifty-volt switches. Love installed one of the switches and appellee was installing the other when he was injured. The table in which the saws were built and on which the switches were installed became heavily charged with electricity, and while so charged appellee's body came in contact with it, which resulted in his injuries.

The evidence showed that the immediate cause of the table being charged with electricity was a wild wire in the switch installed by appellee. That defect in the switch, if it was a defect, was not the result of any fault on the part of appellant. The switch had been bought from a reputable and reliable manufacturer and came to

appellant in that condition, and its condition was not known by appellant, and there was nothing to show that appellant, in the exercise of due diligence, should have examined the switch to see whether there was any defect in it. In the development of the case the ground of liability predicated on the defective condition of the switch was abandoned. The ground of liability on which the case was tried was that the table on which the switches and the saws were installed was not grounded so that if it became charged with electricity the current would be conducted into the ground instead of into the body of any employee engaged in his duties about the machine. In other words, appellee predicated his case upon the ground that the place he was given to work was an unsafe and dangerous place because the table was not grounded.

The evidence either established, without conflict, or tended to establish, these further facts: That the machine ungrounded was an exceedingly dangerous place for an employee working with or around it, and that that was true even though the magnetic switches used were in perfect condition. That Giles, the superintendent, knew this, and it was his duty to inspect and see that the table was grounded before it was turned over to the operating department. That it was the duty of appellant's employee, Brown, and his assistant, Green, in the installation of the machine to ground the table. That it was their fault that it was not grounded. That Giles permitted the machine to be turned over to the operating department and operated for a while without inspecting it to see whether or not the table had been grounded. That appellee and Love, when they went about their work of changing the switches, did not know that the table had not been grounded, but assumed that it had been. That Giles did not know that the table had not been grounded until after appellee's injury.

Appellant asked for and was denied a directed verdict in its favor. This action of the court is the principal ground relied on by appellant for the reversal of the judgment. Appellant contends that it was entitled to a directed verdict (1) because there was no evidence to show that appellant knew of the unsafe condition of the machine, or should have known by the exercise of reasonable care; (2) because in the performance of his labors it was a part of appellee's duties to so construct the machine as to make it safe for employees working around it; (3) because the proximate cause of appellee's injury was the negligence of Brown, a fellow servant, in not grounding the table; (4) because the evidence showed that the machine was not dangerous on account of the table not being grounded.

We have not come across a more correct and clearer statement of the nondelegable duties of a master than that contained in 39 C. J., pp. 285, 286, sec. 412, which is in this language: ''Certain primary or absolute duties are imposed by law upon the master, such as the provision of a safe place to work, the furnishing of safe and suitable appliances and instrumentalities for work, the employment of a sufficient number of servants, the selection of competent servants, and the establishment of proper rules and methods of work. The performance of such primary or absolute duties cannot be so delegated by the master as to relieve him from liability for the consequences of a failure to discharge them, but the negligence with regard thereto of one to whom their performance is intrusted by the master is regarded as that of the master for which he is responsible, even though they are intrusted to a person of approved skill and fitness.''

A multitude of cases are referred to in the notes as supporting the quotation. It is supported by the following decisions of our court; Mississippi Cent. Railroad

Co. v. Hardy, 88 Miss. 732, 41 So. 505; Alabama & V. Railroad Co. v. Groome, 97 Miss. 201, 52 So. 703; Finkbine Lumber Co. v. Cunningham, 101 Miss. 292, 57 So. 916; Edwards v. Hanyes-Walker Lumber Co., 113 Miss. 378, 74 So. 284; Benton v. Finkbine Lumber Co., 118 Miss. 558, 79 So. 346.

It will be seen from these authorities that the duty of the master to furnish his servant a safe place to work is an absolute duty and cannot be delegated to a fellow servant. We shall undertake to apply these principles to this case, taking up for consideration the grounds relied on by appellant in the order above stated.

1. Because there was no evidence to show that appellant knew of the unsafe condition of the machine, or should have known by the exercise of reasonable care. It is true that Giles, the superintendent, did not know that the table had not been grounded until after appellee's injury, but it is also undisputed in the evidence that he knew it was dangerous if it was not grounded, and that it had been turned over to the operating department and had been operated for a short while without being grounded. The evidence also showed that it was Giles' duty to inspect the machine, to see whether or not the table was grounded, before it was turned over to the operating department. It is true that appellee, at the time of his injury, was not a member of the operating crew. He was not operating the machine, but, as a member of the electrical crew, was changing the switches in obedience to the command of Giles; but we are of opinion that those facts did not relieve appellant from liability for the injury. The machine had been installed by other employees than appellee, and while appellee was out of the state, and had been turned over to the operating department and operated by that department, and appellee knew this. He had the right to assume that Giles, as superintendent, had done his duty;

that he had inspected the machine before it was turned over to the operating department and had seen that the table was grounded. Appellee was not called upon, before changing the switches, to ascertain whether or not the table was grounded. He had as much right, as the operating department had, to assume that that had been done. Giles directed appellee not to properly install the machine and see that the table was grounded, but to do a specific thing, namely, to change the switches and instead of those in use install switches of higher voltage. This is not a case where the place to work was safe to start with and became unsafe; it never had been made safe. Under the law it was the duty of Giles, as superintendent, to see that the machine should not be operated until the table was grounded, and he owed this duty not only for the safety of the operating department, but also for the safety of any of appellant's other employees whose duties called them to work with or around the machine, except such employees as those whose duty it was to see that the machine was properly installed and the table grounded. The latter would be making their own place to work as the work progressed, and the appellant would not be liable if they failed to make it safe.

2. Because in the performance of his labors it was a part of appellee's duties to so construct the machine as to make it safe for employees working around it. What has already been said disposes of this contention. Appellee was not directed by Giles to properly install the machine and see that the legs of the table were grounded. As stated above, he was required to do only one particular thing, and that was to change the switches and install others of higher voltage. His place to work was not being made by himself as the work progressed; it had already been made by the employees who installed the machine, and, as above stated, he had the right to assume that it had been made reasonably safe.

3. Because the proximate cause of appellee's injury was the negligence of Brown, a fellow servant, in not grounding the table. The discussion under appellant's contention 1 also disposes of this ground. The fellow-servant doctrine has no place under the facts of this case. Appellant's duty to inspect and see that the table was grounded was an absolute duty and nondelegable. The fact that a fellow servant of appellee, in the installation of the machine, failed in his duty to ground the table, will not relieve appellant from liability for its unsafe condition. The negligence of the fellow servant Brown in failing to make the place safe is chargeable to the appellant and not to appellee. Brown's negligence contributed to the injury, it is true, but the proximate cause of the injury was the failure of appellant's superintendent Giles to do his duty in inspecting and seeing that the machine was properly installed and the table grounded.

4. Because the evidence showed that the machine was not dangerous on account of the table not being grounded. It is true the evidence showed that the wild wire in the switch appellee was installing was the immediate cause of the table being charged, but it showed further, without dispute, that even if the switch had been perfectly constructed the table might have become charged with electricity at any time, resulting in injury to an employee while using it. Giles himself testified most positively, although he was put on the stand by appellee as an adverse witness, that the machine otherwise properly installed made a dangerous place to work unless the legs of the table were grounded.

We do not think the authorities cited and relied on by appellant to sustain its position that it was entitled to a directed verdict are applicable to the facts of this case. They are not in point.

Appellant argues and assigns as error the refusal of the court to instruct the jury that under the evidence

in this case appellant was not under duty to warn or instruct appellee as to dangers incident to or inherent in the place where he was to work. We think the instruction was properly refused by the court. The fact that the table was not properly grounded was a fact "incident to or inherent in" the place where appellee was to work. The appellant was under duty to make the place safe, otherwise to warn appellee when he went to change the switches that the table was not grounded and therefore that the place was unsafe. The manner in which the machine was installed made the place dangerous, and the danger was inherent in and incident to the place.

Appellant complains of the action of the court in refusing to instruct the jury, at its instance, that if they believed from the evidence that the sole proximate cause of the injury was the failure of Brown to put a ground wire or other ground on the machine, it was their duty to find a verdict for appellant. There was no error in refusing this instruction, because under the law appellant's duty to furnish appellee a safe place to work could not be delegated to a fellow servant. It was an absolute duty on appellant. Brown's faulty work was chargeable to appellant and not to appellee. The proximate cause of appellee's injury was not Brown's negligence but the negligence of appellant.

Appellant contends that the court erred in failing to give an instruction on the measure of damages. No instruction was requested by either party on the measure of damages. It seems that a complete answer to this contention is section 586, Code 1930, as construed by numerous decisions of this court. All instructions to the jury must be given by the court in writing on request of one or the other of the parties to the cause. The court cannot be put in error because of the failure of either of the parties to request an appropriate instruction. It was held in Independent Order of Sons & Daugh-

ters of Jacob v. Wilkes, 98 Miss. 179, 53 So. 493, 494, 52 L. R. A. (N. S.) 817, that the defendant, failing to request an instruction on the measure of damages, cannot complain of the failure of the court to give such an instruction where the amount of damages assessed "is well within the sum the jury could properly assess."

Appellant contends that the verdict of twenty thousand dollars is so excessive as to evince passion or prejudice on the part of the jury, and therefore its motion for a new trial on that ground should have been granted. Appellee at the time of his injury was forty-one years of age and in good health. He was receiving from appellant a wage of seven dollars and fifty cents per day. His injuries entailed upon him intense physical and mental suffering over a long period of time, and he is permanently disabled. His earning capacity, to a very large extent, is destroyed. Although the verdict seems large for these times of the increasing value of the dollar, we cannot say that it is so large as to evince passion or prejudice on the part of the jury.

Affirmed.

## On Suggestion of Error.

**Ethridge, P. J.,** delivered the opinion of the court.

Counsel, in suggesting error, state that section 586, Code of 1930, rightfully construed, does not prohibit the judges from instructing juries except on written requests of the parties, and, if it does, it violates the mandate of section 31 of the Constitution which guarantees the right of trial by jury shall remain inviolate.

It is argued that the Constitution, rightfully construed, means that the trial judge shall have power to instruct the jury on the law of the case, regardless of the statute, as a constitutional function attached to his office, and federal and other authorities to sustain the position are cited.

The argument is interesting, and, if the matter was one of first impression, might be entertained, but our court, prior to the enactment of the Constitution of 1890, has uniformly held that the circuit judge cannot instruct the jury of his own motion, but can only instruct when written requests are made. When instructions have been presented, the judge may modify them, if incorrect, so as to conform to the law. Watkins v. State, 60 Miss. 323, decided October, 1882; Edwards v. State, 47 Miss. 581, decided April, 1873; and Archer v. Sinclair, 49 Miss. 343, decided October, 1873. In the first case, Watkins v. State, 60 Miss. 323, the judge undertook to instruct the jury by writing out an instruction and handing it to the district attorney who immediately handed it back to the court, which marked it "given." In discussing the question the court in this case said: "We are not disposed to hamper and abridge the court in the exercise of this valuable power, nor to prescribe too strictly the shape which the modification must take; but it is manifest from the language of the statute that the Legislature intended to deny the judge the power of originating independent instructions of its own motion, not called for or rendered necessary by those requested by counsel. The instruction prepared by the judge in this case was not in modification or explanation of those asked on either side, and evidently was not so regarded by him, else he would not have resorted to the expedient of handing it to the representative of the State in order that a request might be preferred by that officer in connection with it. Clearly that which the statute intends to forbid cannot be rendered admissible by so idle a ceremony as this. The judge having no right to prepare and give it of his own motion, did not acquire any by the course adopted."

In the Edwards v. State, 47 Miss. 581, case, the court said that: "It is here urged by counsel, and for the first time, as far as the record shows, that the court ought to

have submitted to the jury the proposition, that they might consider whether the homicide was not manslaughter. The court was not requested to give an instruction. Even the attention of the court does not appear to have been called to this point. The proposition was not involved in the theory of either the prosecution or the defense. And, even if warranted by the facts, the court was not authorized to instruct, except on request. Code of 1871, sec. 643.''

In the case of Archer v. Sinclair, 49 Miss. 343, the court said: ''The parties have the right to indicate, by written requests, the points upon which they respectively desire the jury to be informed as to the law. Under our system, it would not be proper for the court to instruct sua sponte. If the charges as asked are correct, and pertinent, the safer practice would be to give them as propounded. It may sometimes happen that the same principle of law, with slight variation of language, is embraced in several charges, or that the court is asked to give a charge, which is but a repetition of one already given, or the language employed by counsel is vague and obscure. The court may well decline to encumber the record with the repetition of instructions already granted, and ought to correct whatever of obscurity there may be, so as plainly to lay before the jury, the rules of law invoked.''

The Constitution of 1869, in the section on trial by jury, was readopted by the Constitutional Convention of 1890, with these constructions of the court placed upon that section. They, of course, by such readoptment, became a part of the section readopted.

We have, in numerous cases since that time, held that a judge could not, of his own motion, give instructions to the jury.

Of course, the decisions of the United States Supreme Court in construing the provisions of the Federal Constitution which contains substantially the same language

'carry great weight, but the state is not bound by the provisions of the Federal Constitution upon the subject, as the Federal Constitution does not apply to the courts of the state upon that proposition.

Section 586, Code of 1930, has been often construed, and the construction will not be departed from, as the statute has been reenacted after construction.

Counsel also contend in the suggestion of error that there is no evidence in the record to show that the part of the machinery by which appellee was injured had been turned over to the operating department prior to the injury of appellee without the ground wire connection being adjusted.

We have re-examined the record upon this question, and find that counsel is mistaken in his assertion that there is no evidence in the record to this effect. One witness distinctly states that the machinery and appliances had been operating for thirty or forty minutes by the operating department prior to the injury occasioned to appellee, and the proof shows, without dispute, that the ground wire should have been attached and connected so as to render the machinery safe. The suggestion of error will be overruled.

Overruled.