EDMON v. KOCHTITZKY.

Division B. Mar. 26, 1951.

No. 37895 (51 So. (2d) 482)

B. D. Wade and Allan T. Edwards, for appellant.

Butler, Snow & O'Mara, for appellee.

304

**Hall, J.**

Appellant, as plaintiff, brought suit in the county court against appellee, as defendant, for the recovery of damages on account of personal injuries sustained by him while employed by defendant as a truck driver. The case was tried by a jury which returned a verdict in plaintiff's favor for $1,000. Defendant appealed to the circuit court which reversed the judgment of the county court and entered a judgment for defendant, and from that action the plaintiff appeals here.

The evidence shows that plaintiff had had fourteen years experience as a truck driver but was not a mechanic. He had worked for defendant about nine months but had driven the truck in question only about one month. It was a White truck-tractor with a large trailer van attached. Shortly before the accident in question plaintiff drove this truck and trailer to New Orleans. He had trouble with the steering gear while in New Orleans and had temporary repairs made on it so as to permit him to drive back to Jackson. He thereupon reported to defendant that something was wrong with the steering on the truck and defendant directed him to take it to Motors,

Incorporated, the agency for White trucks, for repairs; he did as directed and after the repairs were made he drove the truck back to defendant's place of business in Jackson on a Saturday and left it there for the week-end. Early on the following Monday plaintiff, pursuant to instructions from defendant, left Jackson with the loaded truck and drove to Houston, Mississippi, and Starkville, Mississippi, where he left his load. The truck was then "steering tight" though it steered satisfactorily when he left Jackson. He proceeded from Starkville to Birmingham, Alabama, where he obtained a load of about ten tons of roofing material and started back to Jackson. While on the road and in the nighttime the truck began to steer poorly and had a tendency to pull to the right of the road. After crossing the state line and at a point a few miles east of Meridian, Mississippi, the drag link connection in the steering apparatus suddenly came completely loose so that plaintiff lost control of the truck, the steering wheel no longer having any effect on the steering of the truck, and it left the highway and wrecked. Plaintiff jumped from the truck and was injured.

The drag link is a heavy iron bar about two feet in length. Near each end there is a socket. Into the socket on one end of the drag link there is inserted a ball at the lower end of the rod which runs from the steering wheel down through the steering column; into the socket at the other end of the drag link there is inserted a ball which is at the end of the horizontal rod which runs practically parallel with the front axle and connects to the wheel spindle; by means of this drag link the connection is completed between the steering wheel and the front wheels of the truck. Naturally these balls and sockets, because of the friction from continued use, will wear and become loose and unless they are tightened the ball will eventually pull or fall from the socket, thereby breaking the connection between the steering wheel and the front wheels of the truck, and if this happens the driver can no longer guide the truck. For

the purpose of tightening the ball in the socket so as to prevent the escape of the ball therefrom there is a large screw, about one and one-half inches in diameter, in each end of the drag link; with the proper tool it is a comparatively easy matter to tighten this screw and replace the cotter key which holds it in position and prevents it from unscrewing. On the occasion in question the ball at the end of the rod which runs downward through the steering column came out of the socket in the rear end of the drag link, and this was the cause of the wreck. A mechanic who qualified as an expert testified for plaintiff that he had inspected the drag link after the wreck and found that the screw in the rear end thereof had not been tightened and that in his opinion this is the reason why the ball came loose from the socket. The foregoing facts are supported by plaintiff's evidence and were not disputed by defendant in any manner; he offered no mechanic as a witness, and made no showing as to what was done in repairing the truck on the Saturday before the wreck; in fact he assumed the position that he himself was not a mechanic, that Motors, Incorporated, had always done good repair work for him, and he seems to have felt that he had discharged his full duty toward his employee when he sent the truck to that concern for repairs.

The special circuit judge who passed on the appeal from the county court filed a written opinion giving his reasons for reversing the judgment and said that the defendant exercised reasonable care in sending the truck to the White agency for repairs and that the record does not show by any substantial evidence or reasonable inferences therefrom that defendant was guilty of any negligence which caused or contributed to plaintiff's injury. In this we think he was in error. The master could not relieve himself of liability to the servant by delegating to Motors, Incorporated, the dealer in White trucks, the duty of using reasonable care to put the truck in question in a reasonably safe state of

repair. The repair shop was the agent of the master and was not the agent of the servant. There was evidence here from which the jury was warranted in drawing an inference that the mechanic who repaired this truck was negligent in not properly tightening the ball and socket in the end of the drag link and that such negligence was the proximate cause of plaintiff's injury. If the mechanic was negligent in that respect, it was the negligence of the master who selected the shop and delegated to it the duty of repair.

In Texas Co. v. Mills, 171 Miss. 231, 246, 156 So. 866, 870, this Court said: ''The master's duty to furnish his servants with safe instrumentalities with which to do their work is not a contractual, but a common-law, duty, which the master cannot delegate to another. The one exception, if exception it be, to this rule, is that a servant injured by a defect in an instrumentality which he himself had contracted to furnish, or which he himself had contracted to keep in repair, relieves the master of any duty to him relative thereto.'' (Citing many authorities.)

In Masonite Corp. v. Lochridge, 163 Miss. 364, 377, 140 So. 223, 225, 141 So. 758, it is said: ''We have not come across a more correct and clearer statement of the non-delegable duties of a master than that contained in 39 C. J. pp. 285, 286, Sec. 412, which is in this language: 'Certain primary or absolute duties are imposed by law upon the master, such as the provision of a safe place to work, the furnishing of safe and suitable appliances and instrumentalities for work, the employment of a sufficient number of servants, the selection of competent servants, and the establishment of proper rules and methods of work. The performance of such primary or absolute duties cannot be so delegated by the master as to relieve him from liability for the consequences of a failure to discharge them, but the negligence with regard thereto of one to whom their performance is intrusted by the master is regarded as that of the master for which

he is responsible, even though they are intrusted to a person of approved skill and fitness.' ''

In Mississippi Power & Light Co. v. Smith, 169 Miss. 447, 465, 153 So. 376, 380, this Court said: ''The liability of the power company springs from the humane principle of law that a master may not delegate his duty to use reasonable care to furnish his servants a safe place in which to work (and not from the doctrine of respondeat superior), and, if he does so delegate it, he may not escape liability therefor.'' Dozens of other Mississippi cases support these same principles, and the rule seems to be firmly established in the jurisprudence of every jurisdiction in this country. In 56 C. J. S., Master and Servant, Sec. 204, pp. 909-910, it is said: ''The duty to furnish safe tools, machinery, appliances, and places for work is a positive, affirmative duty resting on the master, and cannot be delegated to another, or, rather, cannot be delegated to another so as to relieve the master of his primary liability, and the agency or person to whom the duty is attempted to be delegated is immaterial. This is true no matter how carefully the person or agency to whom the duty is attempted to be delegated is selected or how competent or reputable he or it may be.'' The foregoing authorities are a complete answer to appellee's contention that he fulfilled the duty which he owed to appellant.

Appellee next contends that he had no notice of the defective condition of the steering apparatus which caused this accident. Even in his own testimony appellee did not deny that appellant told him upon his return from the trip to New Orleans that there was something wrong with the steering of the truck, and that thereupon appellee directed appellant to carry the truck to Motors, Incorporated, to have the trouble repaired. This is undisputed. Under the law appellee is charged not only with actual notice of whatever defects the mechanic of Motors, Incorporated, actually discovered, but also with constructive notice of any defect which that mechanic

by the exercise of reasonable care should have discovered. It is undisputed that the ball and socket in the rear end of the drag link were worn to the extent that they should have been tightened and it is further undisputed that this mechanic negligently failed to remedy this defect. The worn condition of the ball and socket is something that slowly developed over a long period of time and could not possibly have arisen in the short space of time between completion of the repairs and the wreck, nor was it a hidden defect which could not have been discovered upon a reasonable inspection. By two different instructions granted to defendant the jury was told that they could not return a verdict for plaintiff unless they believed from a preponderance of the evidence that the drag link was defective and that the defendant had knowledge, either actual or constructive, of such defect. By another instruction the jury was told it was their sworn duty to return a verdict for the defendant if they believed from the evidence that the truck was in good mechanical condition when plaintiff drove it from defendant's place of business on the date of the accident and that it became defective after he left Jackson on that date. The jury decided those issues against appellee and we are of the opinion that their finding is sufficiently supported by the evidence.

Appellee's third and last contention is that the plaintiff and defendant both knowingly violated the criminal laws of this state,—the plaintiff by knowingly operating this truck, and the defendant by knowingly permitting it to be operated, upon the public highways of this state in a dangerous and unsafe condition. Appellee's position in this respect is inconsistent with and directly in conflict with his previous contention that he had no notice, either actual or constructive, of the truck's defective condition. Nevertheless he advances the argument that plaintiff and defendant were in pari delicto and relies upon Downing v. City of Jackson, 199 Miss. 464, 24 So. (2d) 661; that case, however, has no earthly

application upon the facts presented in this case for the reason that neither plaintiff nor defendant was knowingly violating any criminal law in the operation of the truck here involved.

The judgment of the circuit court is accordingly reversed and judgment will be here entered reinstating the judgment of the county court in plaintiff's favor.

Reversed and judgment here.