## FINKBINE LUMBER COMPANY *v.* J. B. CUNNINGHAM.

[57 South. 916.]

1. MASTER AND SERVANT. *Independent contractor. Evidence. Sufficiency. Contributory negligence. Jury questions. Safe place to work. Delegation of duty.*

   In a suit by a servant for personal injury, evidence, adduced as shown by the record in this case, held to show that he was the servant of the defendant and was not employed by an independent contractor.

2. MASTER AND SERVANT. *Actions. Evidence.*

   In a suit by a servant for personal injuries, where the defendant claimed that the servant was employed by an independent contractor and was not its servant, evidence that the defendant carried accident insurance on the servants of the alleged independent contractor was admissible to show that defendant was the real master and that the alleged contractor was only one of its employees, and furnished strong proof of that fact.

3. MASTER AND SERVANT. *Contributory negligence. Question for jury.*

   The facts in this case held to raise a question for the jury as to plaintiff's contributory negligence.

4. MASTER AND SERVANT. *Safe place. Continuing duty.*

   The duty of the master to furnish his servant a reasonably safe place to work is a continuing duty, it is not satisfied by putting the place in a reasonably safe condition once, and then allowing it to become dangerous while the servant is at work, but it must be reasonably safe at all times.

5. MASTER AND SERVANT. *Nondelegable duty. Fellow-servants.*

   The duty of the master to furnish his servant a safe place to work and to keep it safe is nondelegable, and the failure of an employee charged with this duty to keep it in that condition was the failure of the master which he could not shift to any other employee.

APPEAL from the circuit court of Harrison county. HON. T. H. BARRETT, Judge.

Suit by J. B. Cunningham by next friend against the Finkbine Lumber Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Miller & Dodds,* for appellant.

In view of the undisputed facts in this case, it is practically immaterial whether the defendant is to be regarded as an employee or not, for, upon the plaintiff's own showing, no conceivable liability is established.

Let it be assumed, for the present, that Guy, instead of being and continuing to be an independent contractor, alone responsible to those whom he employed in respect to delegable duties, was a mere foreman of defendant, the only pretense upon which it is sought to hold the latter, for an unfortunate accident, is that because, in the necessary course of the work being done by plaintiff (under contract with Guy), small pieces of wood, chips, strips or bark dropped upon the floor, which were frequently cleared away, and, in reaching for the oil can, he slipped on one of them and fell on the saw over which he had reached. He was at his regular place of work, was entirely familiar with the conditions, accumulation and insecure footing it might occasion, yet took the step he did.

It admits of no question whatsoever but that the plaintiff's opportunity for knowing the condition of the floor at the moment was far superior to that of defendant; it was perfectly obvious and was inevitable in the operation of a standard machine, therefore, how can negligence be predicated against the defendant?

And the court certainly erred in refusing charge No. 3, asked by defendant, for a reasonably safe place was undoubtedly provided for the plaintiff to work in. If his fellow servants failed to clean up right under his eye, he was bound to know it. There is no absolute guarantee of safety under all circumstances. *N. P. R. Co.*

v. *O'Brien*, 161 U. S. 457. Nor is the master bound to anticipate every conceivable contingency. *McKee* v. *R. R. Co.*, 83 Iowa 616.

If the place is unsafe because of the nature of the work and a servant suffers injury in consequence thereof, he cannot hold the master liable, provided reasonable precautions were taken by the master to avoid injury. The risk of injury from such cause is one of the risks assumed by the servant. 20 Am. and Eng. Ency. Law, 57, citing cases in the United States Courts: Delaware, Illinois, Massachusetts, Michigan, Missouri, New York, Oregon, Pennsylvania, Washington and Wisconsin.

"Obvious imperfections or inherent dangers in methods of work, existing at the time of entering upon the employment, cannot be made the basis of liability in favor of an employee who suffers an injury in the course of such employment." *Ib.* 118-119, citing numerous cases.

Now, it will be recalled that Cunningham said himself the pieces would drop from the end of the saws on the floor and would be cleared away often. He knew the conditions exactly, yet, thoughtlessly, or in momentary forgetfulness of the danger of such a step, reached above the saw and slipped.

"If the servant is conscious of the dangers, the fact that he, for a moment, forgets their existence, and thereby sustains an injury, will not make the master liable." *Ib.* 120.

Plaintiff's case rests absolutely upon the proposition that it was the duty of the defendant, at all times, to keep the floor, where he worked, clear of debris falling from the saws operated by plaintiff and to have anticipated such a contingency as arose, regardless of plaintiff's superior opportunities of knowing the conditions and dangers, if any there were.

Now, while it is true in the abstract, that the duty of providing safe appliances and safe place, for a serv-

ant to work in, is a continuing one, to be accomplished by a proper and timely inspection for defects and the repair thereof. That rule does not apply to defects or dangers arising in the course of the work which are not of a permanent character and do not require the help of skilled mechanics to repair, but which may easily be and usually are remedied by the workmen. On the same principle, an accumulation of debris, which can easily be and usually is removed by the hands working about the place, cannot subject the master to liability. *Ib.* 89. All this is just as applicable to such a change in the conditions of the place as arose in the present instance.

To make the master liable in such case would be to make him an unqualified insurer of his employees' safety.

Again, a servant who fails to use ordinary care in looking out for danger and is injured while in the discharge of a hazardous duty cannot recover therefor on the ground that the master failed to use means to prevent the injury. *Capital City Oil Works* v. *Black,* 70 Miss. 8.

It is a most extravagant assumption that, in providing this place for the stave maker, the employer should have guarded against the danger of his reaching up over a running saw and slipping upon the dropping debris, especially when the oil can could have been safely reached from either end of the box which enclosed the saws, if not from the back as well, which is proved to have been the case.

Upon the theory that plaintiff was an employee of defendant, it was claimed in the court below that the case of *Kneale* v. *Dukate,* 83 Miss. 201, was conclusive in plaintiff's favor. But that is a grave error. There is no similarity between that case and this, as appears from the statement in the brief of counsel for appellant in that cited where he says: "As a general rule, where a man operating a saw is injured by a piece of wood thrown from it at the time of the injury, in the natural course

of its operation, the injury is held to be one of the incidents attending the operation of the saw, the risk of which he assumes when he undertakes such work.'' In that particular case, the negligence of the master was his failure to remove or cause to be removed the strips, debris and other rubbish which had accumulated, from time to time, in the passage way through which appellant had to go; not the case of a temporary accumulation in the course of the work which is swept away many times a day in the plaintiff's own work.

It is apprehended that no case can be found which has imposed such a duty of inspection as is insisted on here.

It is concluded that the place was reasonably safe, to begin with, and it was kept as reasonably safe as could be, considering the nature of this work; that, unlike the case of Kneale, this plaintiff was fully aware of the conditions.

That no mortal could ever be held to anticipate such a contingency as arose in Cunningham's case.

*J. H. Mize,* for appellee, filed an elaborate brief fully covering all points in the case but too long for publication, contending:

1st.   That plaintiff was a servant of defendant and not of an independent corporation. *Brower* v. *Timreck,* 71 Pac. 581, 66 Kan. 770; *Larsen* v. *United Gas Improvement Company,* 180 Fed. 268; *Bains* v. *Works Company,* 223 Pa. 96, 72 Atl. 279; *Tennessee Coal & Granite Co.* v. *Berges,* 47 So. 1029.

2d.   That the evidence discloses a general liability on the part of defendant. *Kneale* v. *Dukate,* 93 Miss. 201; *Baker* v. *Duwamish Mill Co.,* 20 Am. Deg. Rep., Current Series, 738; *Myers* v. *Concord Lumber Co.,* 39 S. E. 960.

3d.   That the instructions for plaintiff were correctly given and the instructions for defendant properly refused. *Hattiesburg Lumber Co.* v. *Blair,* not reported; *Kneale* v. *Lopez* and *Dukate,* 93 Miss. 201.

Argued orally by *E. Mayes,* for appellant.

Argued orally by *George Butler,* for appellee.

MAYES, C. J., delivered the opinion of the court.

In January, 1909, the Finkbine Lumber Company was engaged in the general sawmill business in Harrison county, and in connection therewith operated certain machines for the purpose of manufacturing staves, laths, and shingles. Some time in January of that year the company made a proposition to one W. H. Guy, whereby it was proposed that Guy should assume the control and operation of that part of the machinery of the company used for the manufacture of laths, shingles, and staves. The contract specified the price they were to pay Guy for the manufacture of the products named, and that Guy should use the material for the manufacture of laths, shingles, and staves and the machinery, of the Finkbine Lumber Company. Guy was to receive a certain price for the finished product. Settlement was to be made with Guy at the end of each week, and the contract required that Guy should turn in the names of all employees he might employ, so the Finkbine Lumber Company might charge them with accident insurance, rent, etc., should any of them live in the houses belonging to the Finkbine Lumber Company. The contract with Guy further stipulated that Guy should not employ boys younger than fifteen years of age. It seems that the reason for this stipulation was because the insurance company prohibited the working of boys under that age. The contract also contained a stipulation to the effect that, in case there should be any necessity for repairs that would fall upon the Finkbine Lumber Company to furnish, Guy should make a written requisition on the superintendent, Mr. Finlay. Guy commenced work for the Finkbine Lumber Company under this contract, the Finkbine Lumber Company furnishing all saws, belts,

oil, and power, and Guy employed the laborers, including appellee, who was a boy at that time about nineteen years of age.

The work in which appellee was engaged was in making staves in the mill. It appears that at the place where appellee was at work there were two saws. The material was first put in the cradle and shoved against the saws; the ends being chopped off to make it the proper length. After this was done the material was passed over to the appellee, Cunningham, and he attended to the manufacture of it on an edger into staves. In this way, and on account of neglecting to have it moved away properly, when the ends were cut off, there was an accumulation of sawdust and ends around the place where appellee was working; and, it being his duty to oil the saws, he reached up over the saws in order to get the oil can, and stepped on some blocks or sawdust, and slipped and fell across the saw, and was hurt. There was a "clean-up" man, whose duty it was to remove this accumulation; but this had been neglected for some while before the injury, and, according to the testimony of Cunningham, an accumulation of about a half bushel or more of little blocks and sawdust had been allowed to accumulate. Appellee states that Guy was the foreman of the Finkbine Lumber Company; but this is denied by the company, which asserts that Guy was an independent contractor. Appellee also testified that Mr. Finlay was the general superintendent of the mill, and was over Guy, and that Mr. Finlay would come through the mill, examine the staves, laths, or shingles, and direct Mr. Guy about them. Appellee could not hear what they were talking about. Finlay would then come to where appellee was and hurry him up. Appellee states that Finlay gave no orders other than to occasionally come by and hurry him up with his work. While appellee was so employed the lumber company collected from him certain amounts to be paid as premiums on accident in-

surance. This money was paid to the company, and by them applied to premiums for accident insurance, and the company required that this insurance be kept up on all employees working for Guy. Mr. F. G. Dickman, the assistant general superintendent of the mill, denied that appellee was ever employed by the Finkbine Lumber Company, or so appeared on their books.

At the time of the trial of this case Guy was gone and in no way connected with the mill plant. Mr. Dickman denied that the company had anything to do with the operation of that part of the machinery used by Guy in the manufacture of laths, staves, and shingles, except to furnish the power. He states that the company did not employ the laborers for Guy, and did not employ anybody to clean out that part of the mill used by Guy; that Guy employed and paid all employees working for him, and the company had nothing to do with it. Finlay was the mill superintendent and master-mechanic, and looked after the other parts of the machinery owned and operated by the Finkbine Lumber Company.

After appellee was injured, Dickman urged him to go to New Orleans for the purpose of having his arm examined, which appellee's father declined to let him do. It seems that the father refused to let his son go unless the lumber company would pay his expenses to go with the son. The company offered to send Dr. Rowan with appellee, but would not pay the expenses of the father to New Orleans. The company did offer to pay both the father's and the son's expenses to Hattiesburg, so as to enable the son to consult Dr. Ross. The father declined to do this, and wanted the son to go to New Orleans, but was not willing for the company to send the boy alone.

It appears that the company paid the boy after this accident about fifty dollars on account of the insurance. The testimony in reference to the lumber company requiring this insurance was all objected to, and the court

overruled the objection; and this is urged as 'a cause for reversal, among other causes assigned. Mr. Finlay testified that he was superintendent of the mill, and had been with the Finkbine Lumber Company in this capacity for something like five years. His duty was to oversee the operation in a general way, but he never gave any orders to Guy's men. Finlay states that he had called Guy's attention to the fact that the premises were not properly cleaned up, and Guy promised to have it attended to. Cunningham instituted a suit against the Finkbine Lumber Company, and recovered a judgment in the sum of two thousand dollars, from which judgment an appeal was prosecuted.

It is first contended that there is no liability on the part of the Finkbine Lumber Company, because the facts show that Guy was an independent contractor. Secondly, it is contended that the injury was caused by the negligence of appellee himself. A peremptory instruction was asked and refused. It is quite clear to us that the case made was one for the jury on both propositions. Under the testimony it was for the jury to say whether or not Guy was only a foreman for the Finkbine Lumber Company. Appellee had testified to this. The so-called contract introduced by the Finkbine Lumber Company, which was merely a copy of a letter written to Guy, and rehearsing what had been orally agreed to between them, does not make it clear that Guy was an independent contractor. The fact that the Finkbine Lumber Company saw fit to insure Guy's employees against accident and to collect from them the premium; the fact that they took such interest in this young man·after he was hurt, offering to send him to New Orleans and Hattiesburg; the fact that they collected from this accident policy and paid to appellee half time for some little while after the accident; the fact that Finley was the general superintendent of the mill, looking after the premises, machinery, etc., and had called Guy's attention

to the condition of the mill; the fact that this superintendant would hurry appellee at his work—tended to show, at least, that they had some sort of control over Guy and his men, as well as his finished output. Under the testimony the jury were fully warranted in finding that Guy was not an independent contractor.

The testimony allowed to prove that the company carried accident insurance on Guy's employees was properly admitted. It was strong proof of the fact that appellant was in real control and that Guy was only a servant of the company.

Whether or not appellee was guilty of contributory negligence, under the facts of this case, was a question, for the jury, and they have settled it adversely to the contention of appellant. The facts in this case on the question of contributory negligence are very similar to the facts in the case of *Kneale* v. *Dukate*, 93 Miss. 201, 46 South. 715, and the court there held that it was a question for the jury.

It was not only the duty of the appellant to furnish the appellee with a reasonably safe place in which to work when he started at his work, but this was a continuing duty. The appellee was engaged in the manufacture of staves after the timber had been cut and handed to him. It was no part of his duty to keep the place where he was working in a reasonably safe condition, free from the accumulation of trash; but it was the ever-present duty of the master to see that this was done. Appellee testifies that because the master neglected this duty, and allowed this trash to accumulate there, he was injured while attempting to reach the oil for the purpose of oiling the saws; and if this testimony is true, which the jury have said by their verdict is the fact, there is no question as to the liability of the master.

On the question as to whether or not Guy was an independent contractor, the case of *Brower* v. *Timreck*, 66 Kan. 770, 71 Pac. 581, is directly in point. The facts

in the above case are very similar to the facts in this case, and the court held that the question was one for the jury. See, also, *Laffery* v. *U. S. Gypsum Co.*, 83 Kan. 349, 111 Pac. 498. In both of the above cases it is held that evidence that the owner held insurance indemnifying it against loss and damage from accident to laborers is competent, as tending to show the real relations between the person superintending the operation of the machinery and the owner.

Only one instruction was asked for the appellee, to which there can be no objection. Counsel for the appellant claim that the court erred in refusing instructions Nos. 3 and 5 asked for by appellant. We shall not set out these instructions in full, but in criticism of same will say that both instructions are in direct conflict with the law announced in this opinion. If the court had given instruction No. 3, it would have been virtually a peremptory instruction. Instruction No. 3 undertook to tell the jury that while it is true that it is the duty of the employer to furnish a reasonably safe place for an employee to work, still this rule does not apply to accumulation of blocks or pieces of wood in the course of work being done which are only temporarily and infrequently removed. The instruction entirely loses sight of the fact that the duty of the master to furnish a reasonably safe place is a continuing duty. This duty is not satisfied by putting the place in a reasonably safe condition once, and then allowing it to become dangerous while the servant is at his work; but it must be reasonably safe at all times. Of course, what is stated here with reference to this instruction applies to the character of case which the court has under consideration. There may be some cases in which the very work which the servant is required to do as it progresses requires him to protect himself; but the case presented by this record is not such a case. If this instruction had been given, it would have destroyed the very basis of appellee's suit.

The fifth instruction refused is bad for practically the same reason as the third instruction. The only practical difference between the third and fifth instructions is that the fifth instruction tells the jury that if they "believe from the evidence that the plaintiff reached above the saw for the oil can, and in so doing slipped upon a small block or piece of wood, and fell upon the saw, and that the fact that such piece of wood was on the floor was due to the negligent failure of some other employee to sweep it away, then there is no liability on the part of the defendant, and the jury will say so by their verdict." This instruction seeks to eliminate the non-delegable duty of the master to keep this place in a reasonably safe condition. The failure of an employee charged with this duty to keep it in that condition was the failure of the master. It was one of the master's nondelegable duties—one that he could not shift to any other employee.                              *Affirmed.*
                    *Suggestion of error filed and overruled.*