BIGGINS, Respondent, v. WAGNER, et al, Appellants.

(245 N. W. 385.)

(File No. 7138.    Opinion filed November 28, 1932.)

*Bailey & Voorhees,* and *T. M. Bailey,* all of Sioux Falls, for Appellants.

*Cherry, Davenport & Braithwaite* and *George J. Danforth,* all of Sioux Falls, for Respondent.

RUDOLPH, J. The plaintiff, a man seventy-one years old, was struck by a delivery truck driven by the defendant Wagner. The accident occurred on South Main avenue at a point approxi-

mately midway between West Tenth street and West Ninth street in the city of Sioux Falls. At this point there is a private driveway crossing the sidewalk on the east side of Main avenue. As plaintiff was proceeding across this private driveway, the truck driven by the defendant Wagner was turned in from Main avenue and struck the plaintiff. This action was commenced to recover damages on the theory that the defendant Wagner was negligent, and that his negligence was the proximate cause of the injuries sustained by the plaintiff. The jury returned a verdict in favor of the plaintiff. The trial court entered judgment upon the verdict, and this is an appeal from the judgment and order denying defendants' motion for a new trial. There is no issue made in this court concerning the sufficiency of the evidence to establish the negligence of Wagner or that his negligence caused the plaintiff's injuries.

In addition to Wagner, Fantle Bros., Inc., was made a defendant, and the verdict and the judgment makes both defendants equally liable. Both defendants have appealed. The defendant Wagner asserts that the court erred to his prejudice in admitting in evidence a certain liability insurance policy. Wagner further urges that the verdict is excessive. The defendant Fantle Bros., Inc., challenges the judgment upon both grounds urged by the defendant Wagner, and, in addition thereto, urges that, in any event, Fantle Bros., Inc., should not be liable, for the reason that the evidence is insufficient to sustain the judgment against it, in that the evidence discloses that at the time the plaintiff was injured, Wagner was an independent contractor and not a servant or agent of Fantle Bros., Inc.

The complaint in this action alleges that the defendant Wagner was a servant of the defendant Fantle Bros., Inc., and that at the time of the accident, Wagner was acting in the performance of his duties as such servant. The defendant Fantle Bros., Inc., denied that Wagner was its agent or servant. The trial court submitted to the jury the question of whether Wagner was an independent contractor or a servant or agent under an instruction, which was excepted to only on the grounds that the undisputed evidence established that the defendant Wagner was an independent contractor as distinguished from a servant of Fantle Bros., Inc.

A motion for a directed verdict was made on the same grounds contained in the exception to the instruction. The issue thus presented is: Was there sufficient evidence to justify the trial court in submitting the question to the jury? The testimony concerning this issue, as testified to by the defendants Wagner and Benjamin H. P. Fantle, is as follows: The wife of the defendant Wagner was an employee of Fantle Bros., Inc., acting in the capacity of credit manager for that firm, and had been such for several years. Some time prior to August 15, 1927, Mrs. Wagner and Benjamin H. P. Fantle, the vice president of the defendant corporation, had a conversation and, as a result of this conversation, the defendant Wagner started work delivering parcels for the store. Wagner furnished his own truck, kept it in repair, and delivered all of the parcels from the store, except some few parcels which were delivered by errand boys and by another car owned by the store. In order to deliver all of these parcels, it was necessary on occasions for Wagner to have some help. This help he paid for, hired, and discharged as he saw fit. Wagner received $250 a month. The truck which he used in the business had the name "Fantle Bros., Inc.," painted on each side. The parcels, which he delivered, were left in a certain place in the store where Wagner was allowed to come in and check the records, and, if he approved the records, he assumed responsibilty for the packages, and took them from the store for delivery. The number of trips that Wagner should make in a day, and the route he should take in delivering the parcels, were left to Wagner. Wagner testified that he made deliveries for other persons at various times and received therefor separate compensation. However, upon cross-examination, he could not tell how much work he had done for other people, or for whom, and stated that the only other work he was doing for other people would be as they would come to him and ask him to deliver something. He further testified that, if Fantle Bros., Inc., would ask him to deliver certain parcels ahead of others, he followed any suggestions that were made along this line, and if he were asked what he was doing he would say, "Driving for Fantles." Prior to the time Wagner commenced his work for Fantle Bros., Inc., Benjamin H. P. Fantle cautioned him to be sure to take liability insurance. Mrs. Wagner, following the time that Mr. Fantle suggested the insurance, applied for and received a policy of liability

insurance covering the car involved in the accident wherein the name of the insured read as follows: "Carl R. Wagner and/or Sadie P. Wagner and/or Fantle Bros., Inc." The place of business given in the policy was the address of Fantle Bros., Inc. The business of insured was given as that of "department store." Prior to the time of the accident, Mr. Fantle was advised that this policy had been taken out, and the policy was shown to him by Mrs. Wagner. The policy was offered and received in evidence over the objection of the defendants. The court instructed the jury with reference thereto as follows: "The court admitted this evidence for just one purpose, and one purpose only, which was as to what light it might throw, if any, on whether the relationship between the defendants at the time of the accident was that of master and servant or that of independent contractor. As to all other issues in the case, the court instructs you to dismiss the matter of this insurance entirely from your minds, and in no sense to treat this as a suit against the insurance company, rather than as against the defendants Fantle Bros., Inc., and Wagner."

From the above statement it is readily seen that the question of liability insurance entering into this case is interwoven with the question of whether or not the evidence sustained the submission to the jury of the question whether Wagner was a servant or independent contractor. The insurance policy was received on the theory that it might aid the jury in determining the relationship existing between the defendants.

We discuss first the alleged error in connection with the policy of insurance. This court, in the case of O'Connor v. Sioux Falls Motor Co., 57 S. D. 397, 232 N. W. 904, 906, quoted with approval the following: "The determination of the admissibility of any evidence depends upon whether it tends to prove an issue —whether it is relevant or material; if it is, it cannot be excluded on the ground that it may tend to prejudice the defendant because it tends to show that he carried liability insurance." Was the insurance policy material to the issue here involved? We believe it was. Fantle Bros, Inc., are now taking the position that Wagner was an independent contractor for whose acts it was in no way responsible. The inquiry at once arises: Why, if not responsible for the acts of Wagner, should the company be interested in being

protected by liability insurance? Is it not at least evidence in the nature of admission that the company was liable for the negligent acts of Wagner? The Massachusetts court, in the case of Perkins v. Rice, 187 Mass. 28, 72 N. E. 323, 324, was confronted with a situation similar to that presented in this case. That court said: "If they had taken such a policy, it was evidence of their interest in some form in the elevator, and, with the accompanying proof, might have been found sufficient to satisfy the jury that, notwithstanding their denial, they still retained the management of it. The probative force of this evidence was for the jury, and it could properly be argued that the defendants would not have deemed it prudent to secure indemnity insurance on an elevator not within their control, or for the careless management or defective condition of which they could not be held responsible. * * * Proof of any act of the defendants whom it was sought to hold tending to show the exercise by them of dominion over either [referring to either the elevator or the premises] was competent for this purpose, and the exclusion of the plaintiff's offer of proof was erroneous." The weight to be given this evidence was entirely for the jury. The appellant contends that the fact that Fantle Bros., Inc., suggested this policy, and that they were later advised of its being issued, is not inconsistent with Wagner being an independent contractor, because it might be that Fantle Bros., Inc., desired this insurance as a protection only against the current practice of attempting to hold every one, even remotely connected with an automobile accident, liable therefor. This might be true, and the jury justified in so concluding; on the other hand, we believe that the jury would be justified in concluding that the fact that Fantle Bros., Inc., suggested this policy, and was advised that it was covered therein, was inconsistent with the present claim of Fantle Bros., Inc., that Wagner in his occupation was that of an independent contractor. Were Wegner, in fact, an independent contractor, Fantle Bros., Inc., would in no way be liable for his acts in his occupation as such, and the only reason, which it would have to protect itself against liability, would be in the abundance of caution suggested by the appellant; but whether this insurance was taken in that abundance of caution or taken in the belief that Fantle Bros., Inc., was liable for the negligent acts of Wagner, we believe, was a matter for the jury. It is quite generally held that, where an employer takes

out a policy of liability insurance covering an employee, this fact becomes material, if it is asserted that the employee was not a servant, but an independent contractor. See Arizona-Hercules Copper Co. v. Crenshaw, 21 Ariz. 15, 184 P. 996; Nissen Transfer & Storage Co. v. Miller, 72 Ind. App. 261, 125 N. E. 652; Robinson v. Hill, 60 Wash. 615, 111 P. 871; Sampier v. Goemann, 165 Wis. 103, 161 N. W. 354, Ann. Cas. 1918C, 670; Perkins v. Rice, 187 Mass. 28, 72 N. E. 323; Heywood v. Ogasapian, 224 Mass. 203, 112 N. E. 619; Vaughn v. William F. Davis & Sons (Mo. App.) 221 S. W. 782; Brewer v. Timreck, 66 Kan. 770, 71 P. 581.

We consider now the propriety of the trial court submitting to the jury the question of whether Wagner was an independent contractor or a servant of Fantle Bros., Inc. In this connection we wish to state that the mere fact that Fantle Bros., Inc., requested that it be, and was later informed that it was, protected by liabiliy insurance against the negligent acts of Wagner, would not in itself, perhaps, be sufficient to take this question to the jury. It will be noted, however, that the contract, under which Wagner was employed, was entirely oral. Neither was the contract specific as to its terms. The agreement was simply that Wagner should go to work, furnish his own truck, deliver parcels, and be paid at the rate of $250 per month. Other testimony, bearing upon the relationship of the parties, was not with reference to the original contract, but referred to the manner in which the parties conducted themselves. We thus have a situation where there is no specific or definite contract between the parties defining their rights and duties, and the only manner in which their rights and duties may be determined is from what actually transpired between them. What transpired between them was no doubt evidence of their rights and duties; but it was for the jury to pass upon the weight to be given this evidence, and the credibility of the witnesses testifying.

This court, in the case of Cockran v. Rice, 26 S. D. 393, 128 N. W. 583, 585, Ann. Cas. 1913B, 570, said: " 'While the master is liable for the negligence of the servant, yet when the person employed is engaged under an entire contract for a gross sum in an independent operation, and is not subject to the direction and control of his employer, the relation is not regarded as that of master and servant, but as that of contractor and contractee; and in such case the general rule is that the negligence of the contract-

ing party cannot be charged upon him for whom the work is to be done; and this rule is applicable even where the owner of the land is the person who hires the contractor, and for whose benefit the work is done.' 'The test of the relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent.' 26 Cyc. 1547. To constitute an 'independent contractor,' the contract itself must be one the performance of which will produce a certain understood and specified result—a contract which contemplates a definite beginning, continuance, and ending. A test of the relationship between the employer and the employee is the right of the employer under the contract to control the manner and continuance of the particular service and the final result. No single fact is more conclusive as to the effect of the contract of employment, perhaps, than the unrestricted right of the employer to end the particular service whenever he chooses, without regard to the final result of the work itself."

The trial court closely followed the language just quoted in instructing the jury. Whether Fantle Bros., Inc., had the right under the facts here disclosed to control the manner and continuance of the work of Wagner and the final result, we believe, was a question for the jury. Whether Fantle Bros., Inc., had the right determined from any specific contract, because there was none. Of necessity the existence of this right had to be determined from testimony concerning the manner in which the parties conducted themselves toward each other, and the inference to be drawn from this testimony. In the case of Johnson v. Great Northern Lumber Co., 48 Wash. 325, 93 P. 516, it was conceded by the court that the appellant's witnesses did testify to facts sufficient to show the relationship of an independent contractor, and that there was nothing, on the face of the record, that directly contradicted these witnesses. However, the court there held that the matter was still a question for the jury; the court saying: "There still remains the question of the credibility of the witness. This was a question peculiarly within the province of the lower court and the jury to determine. They had the witness before them. They could observe his conduct upon the witness stand, his apparent frankness or lack of frankness, and his demeanor generally. These matters

are not depicted in the record, and this court is without opportunity to know how far the witness' credibility was affected by them."

In this case, too, we believe the evidence itself to be conflicting. Conceding there was evidence indicating the relationship to be that of independent contractor, nevertheless we are of the opinion that there also was evidence indicating that the relationship was also that of master and servant. Fantle Bros., Inc., directed which packages should be delivered first and Wagner complied with the direction; the delivery truck bore the name "Fantle Bros., Inc."; Wagner when asked his occupation would reply, "Driving for Fantles"; Fantle Bros., Inc., requested insurance against the negligent acts of Wagner. These facts, and others, in the absence of a specific contract, all indicate that Wagner was in fact subject to the direction or control of Fantle Bros., Inc. It is a general rule that where the evidence is conflicting or different inferences may be drawn from the testimony, the question of whether an employee is an independent contractor or servant is for the jury. See 14 R. C. L. 79; Franklin Coal & Coke Co. v. Industrial Commission, 296 Ill. 329, 129 N. E. 811; Decola v. Cowan, 102 Md. 551, 62 A. 1026; Johnson v. Great Northern Lumber Co., supra. The court did not err in submitting the question to the jury.

■■ We consider now the amount of the verdict. The jury returned a verdict in favor of the plaintiff in the sum of $12,000. The evidence discloses that the monetary loss suffered by plaintiff amounted to $786. This sum included his doctor and hospital bills and, also, loss of earnings while disabled. Other than being bruised and scratched, the plaintiff suffered a rather severe injury to his knee, and the skin from his face was torn, and dirt and cinders embedded in the wound. As a result of the injury to the face of the plaintiff, there is some permanent discoloration; the plaintiff being left "with a bluish discoloration under the left eye, roughly circular in shape and approximately an inch in diameter, also a bluish discoloration on nose and upper lip, and a discoloration on chin and right cheek bone." The knee injury will be a permanent injury as the result of a "small amount of malposition in the fragment broken from the bone." As a result of this malposition the knee is weak, and it is necessary that the plaintiff wear

a brace in order to sustain his weight when walking, otherwise there would be a "knock knee" condition, and danger of further injury on account of the weakness of the knee. In the knee joint there is an arthritis condition, which had not developed at the time of the trial to any considerable extent, and the brace aided in retarding the progress of this condition. However, from the doctor's testimony it appears possible, although not certain, that this condition may grow somewhat worse as time goes on, and may cause some pain and interfere with the movement of the knee. The plaintiff was in the hospital six weeks, and during the first portion of that time suffered considerably from his injuries. Upon his release from the hospital he resumed his old occupation, and was regularly employed at the time of the trial at the same salary as he had received prior to the accident. The plaintiff at the time of the accident was seventy-one years old, with an expectancy of life of eight years. For some eight months following the accident and prior to the time of the trial, the plaintiff had been engaged as before the accident and, apparently, had suffered no loss of earning power. His earning capacity was at the rate of $125 a month. We are of the opinion that the verdict is excessive. We appreciate the caution that should be observed by any court before concluding that the damages awarded by the jury are excessive, but it occurs to us that in this case the jury must have been influenced by passion or prejudice to return a verdict in the amount that it did. In addition to the size of this verdict, we have in this case the fact that the jury had before it the liability insurance policy covering these defendants. True, this liability insurance policy was properly received; but this court, like many other courts, recognizes the danger connected with the insurance feature, in cases such as this. There is no doubt in our minds that the amount of this verdict was influenced to a large extent by the knowledge of the jury that a foreign insurance company would ultimately pay up to the extent of $10,000, should the plaintiff be successful.

Those cases which form the basis for the statement referred to above, and quoted with approval in the case of O'Connor v. Sioux Falls Motor Co., supra, recognize that, while material and therefore admissible, it (knowledge that defendant carried liability insurance) "may tend to prejudice the defendant." The liability insurance policy, being material and tending to prove an issue, was

properly received in evidence, and this court cannot and will not set aside the verdict because of its admission, even though the evidence is prejudicial, when this and other competent evidence sustains the verdict. However, this court is, nevertheless, at liberty to ascertain whether or not in its opinion an excessive verdict has been returned because of passion or prejudice, and in ascertaining this question, we believe, we are entitled to consider the almost universal judgment of courts that knowledge of the jury that the defendant carried liability insurance may be and often is prejudicial. We have no hesitancy in saying that, in cases where the fact that liability insurance was carried by the defendant has come out in the trial court, this court will scrutinize with care the verdict the jury returns.

There is abundant competent evidence in this case to establish that Wagner was negligent and that his negligence was the proximate cause of the plaintiff's injuries. The appellants do not challenge the sufficiency of the evidence in this regard. We thus have a situation very similar to that in the case of Gamble v. Keyes, 49 S. D. 39, 206 N. W. 477; the plaintiff is under the facts entitled to recover, the question being the amount. We are, therefore, of the opinion that we should adopt the same procedure in this case as was adopted in the Gamble Case. We are of the opinion that the judgment here must be reduced, and that it should not exceed $7,000. The order of this court will be that, if within 20 days after the handing down of this opinion the plaintiff shall file in this court a written election to accept judgment in the sum of $7,000, with interest thereon from the date of the judgment of the trial court and the costs below, then the judgment of the trial court, as modified by the election of the plaintiff, will be affirmed, and no costs will be taxed in this court. If, however, plaintiff shall within such time neglect or refuse to accept said sum, then the order denying a new trial and the judgment will be reversed with costs to appellant.

CAMPBELL, P. J., and POLLEY, ROBERTS, and WARREN, JJ., concur.