189 So. 757

## MOORE–HANDLEY HARDWARE CO. v. WILLIAMS.
### 6 Div. 406.

Supreme Court of Alabama.

May 18, 1939.

Rehearing Denied June 22, 1939.

London & Yancey and Fred G. Koenig, Sr., all of Birmingham, for appellant.

Clifford Emond, of Birmingham, for appellee.

GARDNER, Justice.

Suit by the administrator of the estate of James E. Mooskey, deceased, under the homicide statute, Code 1923, § 5696, to recover damages for the alleged negligence of the servant or agent of defendant, Moore-Handley Hardware Company, in and about the operation of an automobile on a public road, proximately resulting in the death of plaintiff's intestate, a pedestrian on the highway.

The automobile that struck Mooskey was owned by one McClinton, and operated by him at the time.

Upon the question of McClinton's negligence, as well as contributory negligence on the part of decedent, the testimony was in sharp conflict, and that these issues were properly submitted to the jury is not here controverted.

The defense in the main is rested upon the contention that McClinton was not the agent of defendant, but an independent contractor, and upon this issue much proof was taken.

Defendant, among other matters of merchandise, was engaged in the sale of radios, with an established place of business in the city of Birmingham. McClinton was one of defendant's radio salesmen, and at the time of the accident was on his way to the home of a customer, one Hotchkiss, to close the sale for a radio which he had delivered the day before for demonstration. The accident occurred the evening of December 10th and the sale was completed the day following, December 11th. Hotchkiss was a customer of defendant, and first met McClinton in the storeroom, where the latter displayed to him the radios and made arrangements to bring one to his home for better demonstration. McClinton and other salesmen were required to work on the floor of defendant's place of business one day a week selling its merchandise, with hours from 9 in the morning to 6 in the afternoon. Defendant had sales meetings each morning and the salesmen were notified to attend. At these meetings instructions were given in the mode of selling merchandise, describing it and putting it on the market, teaching the salesmen the technique to use. "We had a routine, a set rule, to go through with there, how to make a sale, about how to take the order, and write it up and submit it for approval. * * * There was a fixed method there of selling that merchandise on time. We had to go through certain prescribed rules and regulations that they had to sell merchandise on time. * * * They had to approve all sales." The salesmen had no fixed territory and were not liable for any default of the purchaser after the sale was approved. They were paid a commission on a sliding scale of ten per cent., and at the end of the month if a quota was made there was another two per cent., and if at the end of the year a quota was made there was another one per cent.

McClinton worked on this basis, with no salary and no fixed territory, and no definite requirement as to hours or days to work. At times he has delivered defendant's merchandise in his car, and the expense of ownership and operation of the car was his own. Defendant preferred salesmen with automobiles, but made no definite requirement in this respect. Defendant knew McClinton was using the car in his work as salesman, and there was evidence tending to show that at the time of the accident he had in the car a radio of defendant and its literature.

Defendant's manager testified as to the sales school each morning for instructing the salesmen as to the best procedure in handling a deal. "If they did not follow our prescribed rules and regulations, or the suggestions that we made, it would be a matter of self preservation, would be the governing factor. He would eliminate himself, he would starve to death." And as to the use of automobiles, the manager said: "I don't remember whether at that particular time we required all our salesmen to have cars." McClinton was subject to be discharged by defendant at any time, and his employment was indefinite. Defendant would give him names of prospects and asked him to call on them, and told him what they were in the market for. "Sometimes they would tell us what kind they would like to sell to that particular one, in other words, they would suggest to us a particular kind they would like for us to sell that particular one." McClinton further testified: "Under this agreement with me they had a right to say whether I could sell this party or not. I went by what they wanted me to do in the procedure of selling their radios, I tried to conform to what they wanted me to do at all times. * * * They had a right to make suggestions and requests of me. * * * They gave us suggestions, when to call on them, and when the parties would be at home. * * * We made a list of our prospects that we had over there for our protection. They kept a list of all our prospects. * * * They had a right to fire me, yes."

It was one of the requirements made of McClinton that he represent no one other than defendant. He had a "schedule of terms and everything to go by," and was expected to observe those terms. Many details have been omitted, but what has been said should suffice as a general outline of McClinton's duties and his relation to the defendant, and the work he was engaged in at the time of this accident.

True some of the testimony of the manager, as well as McClinton, tended to show the relationship of an independent contractor. Illustrative is the manager's statement that no requirement was made

as to the method of travel, whether by automobile, bicycle, taxicab or otherwise, and there was no requirement that the salesmen attend the sales meetings, and that he did not at any time direct McClinton as to territory or where he should go, and nothing was contributed to the upkeep of McClinton's car. Some of McClinton's testimony was to like effect. But all of this testimony is to be considered in connection with the other, some of which we have herein quoted; and it must be kept in mind that the question we are now considering has relation to the matter of the general affirmative charge.

McClinton denied there was any radio in the car at the time of the accident, and his testimony tends to show in one particular that at times he did deliver merchandise for defendant. But more than one witness testified as to a radio and defendant's literature in the car when the accident occurred.

All of this was a matter for the jury's consideration. No isolated fraction of the evidence is to be considered as controlling, but all of it is to be taken into account and weighed by the jury. The jury was authorized to infer also that the salesmen were required to sell on the floor one day of every week, and it was on such a day that McClinton met Hotchkiss, which resulted in the sale of the radio and to whose house he was en route to close the sale when the accident occurred. And though McClinton and the manager indicate that the attendance at the sales meeting was not compulsory, yet we think the jury could infer that a salesman who ignored the meeting and persistently declined to go would not long remain a salesman. And though the car was that of McClinton, yet defendant knew it was being used unreservedly in the business; and we conclude from all the testimony that the jury might well infer McClinton was at least impliedly expected to use a car in the prosecution of the business, and if there was merchandise in the car belonging to defendant, it was for the jury to consider for what purpose it was there. All of this evidence is to be considered in connection with the other question now to be treated.

In addition to all of this proof, plaintiff offered in evidence, over defendant's objection, a liability insurance policy applied for and issued to defendant to protect it against the operation of McClin-

ton's automobile. The trial court limited the introduction of the policy to the sole purpose of consideration by the jury upon the issue as to whether or not McClinton was the agent of defendant or an independent contractor, and gave careful and explicit explanation to that effect, and so far as possible eliminated any prejudicial influence its introduction might otherwise have on the jury in considering the merits of the case.

The policy covered the liability of the named insured only, that is, this defendant, for damages arising out of accidents resulting from the operation in the business of defendant, the named insured, of any automobile of the private passenger type by any person named in the schedule, and expressly excludes coverage for the operation of an automobile owned by insured. Under the heading, "Name of officer, employee, or direct agent or representative (designate agent and representatives by 'agt.')" appear six names, among them "R. E. McClinton," with no designation as "agt." or otherwise.

We do not consider that this omission is to be given any great significance. The courts generally, including our own, have vigorously denounced any effort on the part of the plaintiff, in actions of this character, to get before the jury the fact that the defendant is insured against liability, since it can have no tendency but to induce a verdict based on the ground that an insurance company, and not defendant, would be affected.

But the authorities also agree that such evidence is admissible where it is material as tending to establish an incidental fact in issue. 36 Corpus Juris 1128, 1129. If such evidence is relevant and material to any issue in the case, it cannot be excluded on the ground that it may tend to prejudice the defendant or because it tends to show he has indemnity insurance.

Perhaps the case more nearly in point, where the question is fully considered, is that of the South Dakota court in Biggins v. Wagner, 60 S.D. 581, 245 N.W. 385, 387, 85 A.L.R. 776. Counsel for defendant argued there, as here, that the defendant may have procured the policy out of an abundance of precaution only, and "as a protection only against the current practice of attempting to hold every one, even remotely connected with an automobile accident, liable therefor."

Answering the argument, the court said: "This might be true, and the jury justified in so concluding; on the other hand, we believe that the jury would be justified in concluding that the fact that Fantle Bros., Inc., suggested this policy, and was advised that it was covered therein, was inconsistent with the present claim of Fantle Bros., Inc., that Wagner in his occupation was that of an independent contractor. Were Wagner, in fact, an independent contractor, Fantle Bros., Inc., would in no way be liable for his acts in his occupation as such, and the only reason, which it would have to protect itself against liability, would be in the abundance of caution suggested by the appellant; but whether this insurance was taken in that abundance of caution or taken in the belief that Fantle Bros., Inc., was liable for the negligent acts of Wagner, we believe, was a matter for the jury. It is quite generally held that, where an employer takes out a policy of liability insurance covering an employee, this fact becomes material, if it is asserted that the employee was not a servant, but an independent contractor. See Arizona-Hercules Copper Co. v. Crenshaw, 21 Ariz. 15, 184 P. 996; Nissen Transfer & Storage Co. v. Miller, 72 Ind.App. 261, 125 N.E. 652; Robinson v. Hill, 60 Wash. 615, 111 P. 871; Sempier v. Goemann, 165 Wis. 103, 161 N.W. 354, Ann.Cas.1918C, 670; Perkins v. Rice, 187 Mass. 28, 72 N.E. 323; Heywood v. Ogasapian, 224 Mass. 203, 112 N.E. 619; Vaughn v. William F. Davis & Sons, (Mo. App.) 221 S.W. 782; Brower v. Timreck, 66 Kan. 770, 71 P. 581."

Likewise directly in point is Pan-American Petroleum Corp. v. Pate, 157 Miss. 822, 126 So. 480, 128 So. 870, reapproving Finkbine Lumber Co. v. Cunningham, 101 Miss. 292, 57 So. 916. There are authorities contra. Hutchins v. John Hancock Mut. Life Ins. Co., 89 N.H. 79, 192 A. 498; 1 Wigmore on Evidence (2d Ed.) sec. 282, and sec. 282-a in 1934 supplement; Kennedy v. Union Charcoal & Chemical Co., 156 Tenn. 666, 4 S.W.2d 354, 57 A. L.R. 739 et seq.

But we need not further pursue the authorities elsewhere, as our own Court has recognized the admissibility of such evidence when relevant and material to an issue of this character. See Ross & Co. v. Collins, 224 Ala. 453, 140 So. 764, where the Mississippi case of Finkbine Lumber Co. v. Cunningham, supra, is approvingly cited. And in Smith v. Baggett, 218 Ala. 227, 118 So. 283, cited approvingly in Pittman v. Calhoun, 233 Ala. 450, 172 So. 263, the Court observed [218 Ala. 227, 118 So. 285]: "It is unquestionably well settled that proof that a defendant had indemnity insurance is not admissible as an independent fact, but we have had cases where it is when collateral to other material facts or so associated with or interwoven as to be inseparable that it becomes admissible and can only be eradicated or neutralized as bearing upon the defendant's liability by a limitation upon the effect of such evidence."

And likewise the following from Mobile Pure Milk Co. v. Coleman, 230 Ala. 432, 161 So. 829, 831.: "While this court condemns the injection of liability insurance into this class of cases, unless it becomes necessary to fully present the issues involving some legal right of the plaintiff, we cannot say the Court of Appeals misconceived or misapplied the law in this regard by admitting in evidence the liability policy taken out by the manager in the name of defendant company."

Further discussion we consider unnecessary. There was no error in the admission of this evidence.

But defendant argues that conceding for the moment the admissibility of the insurance policy, at most it created a rebuttable presumption as to the ownership of the car, and that the presumption has been sufficiently overcome by the proof under the authority of Tullis v. Blue, 216 Ala. 577, 114 So. 185; Toranto v. Hattaway, 219 Ala. 520, 122 So. 816, here considered in the more recent case of Chandler v. Owens, 235 Ala. 356, 179 So. 256.

We think defendant's counsel misconceive the purpose of the proof in this particular case. No one questioned the ownership of the car. It belonged to McClinton as his individual property. The issue was as to whether or not in the operation of that car McClinton was an agent or employee of defendant or an independent contractor, and the policy was admissible as throwing some light upon that question of relationship. It is not a matter of any presumption, but proof of a fact to be considered by the jury in connection with all the other evidence in the case. The rule of the above cited cases, therefore, is here inapplicable.

Upon the merits of the whole case and defendant's request for the affirma-

tive charge much reliance is had upon Aldrich v. Tyler Grocery Co., 206 Ala. 138, 89 So. 289, 17 A.L.R. 617; Taylor v. General Refrigeration Sales Co., 231 Ala. 469, 165 So. 572; Birmingham Post Co. v. Sturgeon, 227 Ala. 162, 149 So. 74, and Greenwald v. Russell, 233 Ala. 502, 172 So. 895, each of which has been re-examined with care. But, as observed in Birmingham Post Co. v. Sturgeon, supra, it is not possible to lay down a hard and fast rule or state definite facts by which the status of men working and contracting together can be definitely defined in all cases as employee or independent contractor. Each case must depend upon its own peculiar facts.

■ Bearing this in mind a comparison will disclose many differentiating features as to the facts between the instant case and those relied upon by defendant. They can only serve as guides by way of illustration of the legal principle involved. The fact that McClinton drew no salary, but received compensation by way of commissions did not suffice to make him an independent contractor. Martin v. Republic Steel Co., 226 Ala. 209, 146 So. 276; Tuscaloosa Veneer Co. v. Martin, 233 Ala. 567, 172 So. 608.

■ We have recently approved the statement of the general rule of the common law that the relationship of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, and that such relationship exists where the master has "choice, control and direction" over the servant, who represents or acts for the master, not only in the ultimate result of the work, but in all its details. Ex parte Board of School Commissioners of Mobile County, 235 Ala. 82, 178 So. 63. Like expressions are found in Birmingham Post Co. v. Sturgeon, 227 Ala. 162, 149 So. 74, 78, where is also approved the statement that "the essential test by which to determine whether in doubtful cases the relation between a workman and those for whom he was rendering service was that of an employee or of an independent contractor, was not so much dependent upon whether he received wages or whether he was to devote all or a portion of his time to the performance of his specified service, but was rather dependent upon the extent of control or right of control' which the so-called

employer was to exercise over its so-called employee."

■ And our Court is committed to the proposition that it is the reserved right of control rather than its actual exercise that furnishes the true test of whether the relation between the parties is that of an independent contractor or of employer and employee—master and servant. Birmingham Post Co. v. Sturgeon, supra; Tuscaloosa Veneer Co. v. Martin, supra.

■ Defendant conducted a school each morning when the salesmen were given very definite instructions as to their work. They were frequently given prospects to call upon with suggestions concerning them, and they were expected to follow a given schedule, a set rule. All sales must be approved by defendant, and McClinton states defendant had a right to turn down any sale he made. Defendant had the right to discharge McClinton at any time it saw fit (a circumstance to be considered—Martin v. Republic Steel Co., 226 Ala. 209, 146 So. 276), and McClinton fully recognized defendant's right to make suggestions and requests which he sought to carry out.

Defendant knew he was using an automobile, and McClinton says they preferred the salesmen use cars, as they could get about better and produce more business; and the manager's testimony indicates that such use at one time was required, but whether at the time of the accident he was uncertain. McClinton was also required to serve one day each week as floor salesman at defendant's place of business, and it was while he was so serving he met Hotchkiss, a customer of defendant, which meeting resulted in making a sale of a radio, and to whose home McClinton was going to close the trade when the accident occurred. But more than that, McClinton did occasionally haul merchandise of defendant for delivery; and there was proof tending to show he had some of defendant's merchandise (a radio) and literature in his car at the time of the accident, though this was disputed.

Added to this is the insurance policy wherein defendant was indemnified to a limited sum against liability to a third person for any negligence of McClinton in the operation of his car.

As we have previously observed, the facts of the instant case are widely dif-

ferent from those considered in the cases relied upon by defendant, with particular stress upon Taylor v. General Refrigeration Sales Co., supra.

What has been said suffices to show the differentiating features without a comparative discussion here which would extend the opinion to undue length.

■ Under the facts here presented and in the light of the controlling legal principles, which have been stated, we think a jury question was presented, and that the court committed no error in refusing to defendant the general affirmative charge.

■ Nor do we consider the verdict was so contrary to the great preponderance of the evidence upon this question as to call for a disturbance here of the trial court's action in denying a motion for a new trial upon this ground. The rule by which we are guided in matters of this nature is too well understood to require citation of authority or further discussion.

■ Refused charge 20 (assignment of error No. 38) is criticized by plaintiff as incorrectly stating the rule as to the matter of control, omitting altogether the reserved right of control and substituting therefor the actual exercise thereof. Perhaps the criticism is well taken, but its actual determination is unnecessary for the reason that the proposition the charge seeks to state was substantially and fully embraced in the oral charge of the court.

■ The eleventh assignment of error relates to the action of the court in sustaining an objection to the question to witness McClinton. We need not stop to inquire as to whether or not the question was subject to the stated ground as a conclusion of the witness. The witness had related on direct examination all details of the accident, reiterated on cross examination, and the question was on re-direct examination. It concerned no matter in rebuttal, but in substance called for a summation of the witness's theory of the accident as already testified to by him. Under these circumstances, the allowance of this question on re-direct examination was a matter resting within the sound discretion of the trial court. 70 Corpus Juris 698–703; Dukes v. State, 210 Ala. 442, 98 So. 368.

■ Moreover, it would seem that immediately following the ruling this witness in substance answered the question when he stated, without objection, that when decedent stepped in the path of his car he applied his brakes as quickly as was possible.

The assignments of error urged upon our attention by counsel for appellant have been duly considered, and we find nothing in them calling for a reversal of the judgment rendered.

It results, therefore, that the judgment is due to be affirmed, and it will be so ordered.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.