## LEONARD v KREIDER

Ohio Appeals, 9th Dist, Summit Co

No 2556.   Decided Sept 30, 1935

Slabaugh, Seiberling, Huber & Guinther, Akron, for plaintiff in error.

Smoyer, Kennedy, Smoyer & Vogel, Akron, for defendant in error.

## OPINION

By STEVENS, J.

The record herein discloses, and it is conceded by counsel, that the defendant was at all times under consideration a motor transportation concern, within the purview of §§614-2, 614-84 and 614-99, GC, transacting the business of a common carrier.

We cannot find from the evidence that Hixson was a common carrier, or that he made a contract as such with the defendant or anyone else for the transportation of the goods in question.

It is further apparent that the only contracts of haulage entered into by the consignors of shipments to be hauled by defendant, were those executed by defendant, through the drivers who were sent by defendant to said consignors to load and haul the freight to be moved. The uniform bills of lading covering the shipments were signed by the drivers of said trucks for and in the name of the defendant, and in no sense were contracts between the drivers and the shippers unless the drivers and the defendant were engaged in a joint enterprise. The evidence discloses that copies thereof were then delivered to defendant, and that from the contents of said bills of lading, way bills were prepared by defendant and given to the truck drivers for carriage to the consignees, who were required to receipt thereon upon delivery of the goods so hauled. Said way bills were then returned to defendant by said drivers.

It must be borne in mind that no written contract of employment existed between the defendant and Hixson, the driver of the truck in question, and that the relationship between Hixson and defendant must of necessity be determined by an examination of all of the evidence, and the contract construed in the light of all the surrounding circumstances.

It is our impression that the evidence disclosed by this record manifests a relationship more in the nature of a joint adventure between Hixson and defendant, than it does a relationship of independent contractor. Defendant was to solicit the haulage, obtain contracts, do the necessary billing and bookkeeping, collect and disburse the money arising from said hauling, and Hixson was to furnish his truck and driver, as well as gas, oil, tires and repairs, go when and where he was told, and carry such goods as defendant might desig-

nate, using his discretion and judgment as to highways to be used en route, but being required to register in a book furnished by defendant and kept at a gasoline station in Ripley, N. Y. The proceeds arising from the hauling of said freight were to be divided 15% to defendant and 85% to Hixson, with a deduction made for cargo insurance of 3 or 4 percent of the gross amount received. If the compensation for the haulage was not collected, neither defendant nor Hixson receiving anything, and the defendant did not agree to pay Hixson for such hauling.

In 23 O. Jur., "Joint Adventure," §2, p. 330, it is said:

"A joint adventure has been defined to be a special combination of persons undertaking jointly some specific adventure for profit, without any actual partnersh'p or corporate designation; an association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge. * * *

"The relation of joint adventure obviously is created where two or more persons combine their money, property, or time in the conduct of some particular line of trade, or for some particular business deal, agreeing to share jointly, or in proportion to capital contributed, in the profits and losses, assuming that the circums'ances do not establish a technical partnership. * * *"

If our thought in this respect be correct, and if Hixson was guilty of negligence which proximately contributed to the injury of plaintiff, then liability would attach to the defendant; for the liabilities of joint adventurers are predicated upon the theory of mutual agency, and are in large part identical with those of partners.

We are clearly of the opinion that there is ample evidence in this record to warrant the conclusion that Hixson, at the time and place in question, was acting as the agent of defendant, within the scope of his authority; and whether the conclusion be reached that Hixson was a joint adventurer or the servant of defendant, acting within the scope of his employment and authority, the liability of the defendant would be the same.

Unless there was a joint adventure, no one other than the defendant agreed with the shipper to transport said goods. On its face, the written contract with the shipper was the contract of the defendant to transport the goods as a common carrier, and, independent of that contract, Hixson

did not make a contract with anyone who agreed to pay him for transporting said goods. The shipper agreed to pay freight to the defendant, and the defendant agreed to divide the freight charge under the shipping contract with Hixson if the same should be paid by the shipper, provided Hixson would join with the defendant in the venture, and, under the direction and control of the defendant, do some of the things necessary to earn the freight.

As we view the evidence, the jury was warranted in finding that the defendant had such right to direct and control the actions and activities of Hixson as to render the arrangement incompatible with the theory of independent contract.

We further find, upon the evidence adduced in this cause, that the circumstances were not such as to require the court to instruct the jury that, as a matter of law, the relationship existing between Hixson and defendant was one of independent contract, but that the question as to said relationship was one of fact, properly submissible to the jury, as was done.

It is claimed by defendant that error intervened when "evidence concerning the identification card and the placards on the trucks, all of which came into existence after the happening of the accident in question" was admitted.

The record clearly reveals that the course of conduct of defendant and Hixson was the same prior to and after the collision in question as at said time, and that their rights and obligations under their relationship remained unchanged; and therefore, as bearing upon the question as to the relationship existing between them at the time of the collision, we believe that said evidence was properly admitted.

We are further of the opinion that the admission into evidence of the "hired car endorsement" of the insurance policy was entirely proper, as also would have been the entire insurance policy. §614-99, GC, requires motor transportation concerns, such as defendant was, to provide liability insurance policies or bonds "satisfactory to the commission in such sum and with such other terms and provisions as the commission may deem necessary adequately to protect the interests of the public * * *."

Defendant had not complied with the statute with reference to obtaining a certificate of convenience and necessity, but he had obtained a liability insurance policy to indemnify him for any damage he might be compelled to pay by reason of the negligence of the drivers of the trucks used in the transportation of freight hauled under contracts which he made with shippers. We believe that the evidence as to the endorsement in question was entirely material, relevant, and competent to be considered in a determination of the relationship existing between Leonard and Hixson, and the record discloses that said evidence was admitted by the trial court solely for that purpose, and the jury so advised.

Biggers v Wagner, 85 A.L.R. 776.

Perking v Rice, 187 Mass. 28.

Error is claimed because of the trial court's refusal to give defendant's special request No. 6 before argument.

That special charge reads as follows:

"6. In this case there is uncontradicted evidence that the truck operated by Wesley Hixson was equipped with headlights, a tail-light and green lights above the cab, when leaving Akron. There is uncontradicted evidence that all these lights were burning at the time the truck came to a stop, and when Hixson left it to go to Conneaut. I say to you as a matter of law, that if the lights on the truck were thereafter turned out, and the truck permitted to stand on the highway without lights, the act of turning out the lights was one for which Leonard cannot be held responsible, and, if you find that they were out thereafter, the defendant, Leonard, is not liable to the plaintiff."

It will be observed that the charge as presented stated "if the lights on the truck were thereafter turned out," but it does not say by whom.

We think that said special instruction did not state a proper and accurate proposition of law, applicable to the evidence, and that the same was properly refused by the trial court; and, under the circumstances, it was not prejudicial error for the court to refuse to charge as requested.

In view of plaintiff's special request No. 2, and defendant's special request No. 10, both of which were given, and of what the court said in the general charge on the subject of sole negligence, it was not prejudicial error for the court to use the language which was used in the general charge, concerning which complaint is made.

We find no prejudicial error in the other errors assigned with reference to the general charge of the trial court.

This court is of the opinion that this case was carefully and fully presented to the jury, under the guidance of an able trial judge, that the verdict returned by the jury is fully sustained by the weight of the

evidence, and that substantial justice has been accomplished herein.

Judgment affirmed.

FUNK, PJ, and WASHBURN, J, concur in judgment.