## PRICE v HORNER et

Ohio Appeals, 9th Dist, Summit Co

No 2857. Decided April 19, 1937

Weick, Powers and Mason, Akron for appellee.

Bailey & Bailey, Akron, for appellant, Anthony J. Crookston.

Bailey & Bailey, Akron, and Clarence A. Kelley, Akron, for appellant Dixie-Ohio Express Co.

## OPINION

**DOYLE, J.**

This case is presented on appeal on questions of law, to review a judgment of the Court of Common Pleas of Summit county.

At the trial by jury in the Common Pleas Court, it appeared that one of the defendants, Dixie-Ohio Express Co., was a corporation, engaged in the business of the interstate transportation of freight, as a common carrier. It carried the freight in its own trucks and also in trucks owned and operated by others. It paid to the truck owners 70% of the moneys received from the consignors of said freight, and retained for itself 30%. Each truck owner carried his own insurance on the equipment and bore all expenses of the haul. Pursuant to arrangement between the issuer of the insurance policy, the truck owners and the said defendant, the Dixie Ohio-Express Co., each truck owner was required, before setting forth on a trip, to have his equipment inspected at designated inspection stations. If, after such inspection, the equipment was approved, a certificate was given to the truck owner, or his agent in charge, which certificate was then given over to the Dixie-Ohio Express Co., and in return the said company gave the owner or his employee the necessary papers for the in-

terstate transportation, and the truck and load were permitted to proceed.

The facts set forth supra are a compendium of the arrangement between various parties who took a part in the events leading to the commission of the offense which is the subject of this litigation.

A consideration of all facts, as shown by the record, persuades one ██ that the company and the truck owner in the instant case were engaged in a joint adventure, and we so find beyond peradventure.

One of the defendants in the case below was Holly S. Horner, a truck dispatcher in the employ of the Dixie-Ohio Express Co., and in addition thereto were Anthony J. Crookston and Thomas A. Crookston; the former the owner of the truck involved in this case and engaged in a joint adventure with the Dixie-Ohio Express Co., and the latter, his agent and servant.

The plaintiff, Thomas Price, was a brother of, and an employee at the gasoline filling station of, a designated inspector mentioned heretofore.

It further appears from the record that on the 19th day of October, 1935, the defendant Thomas A. Crookston, servant of the defendant Anthony J. Crookston, before setting out on an interstate trip, drove a truck to the filling station operated by an inspector, for the purpose of having the truck inspected and securing a certificate. Said inspector's brother, the plaintiff herein, was in charge of the station. The truck was loaded and ready to start as soon as the certificate could be obtained and delivered to the Dixie-Ohio Express Co.

The plaintiff refused the driver a certificate, after stating to said driver that he, the plaintiff, could not read or write and that he had no authority to issue a certificate in the absence of his brother. The driver then left the station, walked a short distance to the office of the Dixie-Ohio Express Co., and reported the circumstances to the dispatcher Horner. Horner, in turn, called by telephone the filling station, and engaged in an argument with the plaintiff. He then proceeded, with the driver Crookston, to walk to the station. Upon arrival, plaintiff's brother, the inspector, drove in, and while the three (the inspector, Horner and Crookston) were engaged in conversation and argument, the plaintiff joined them. Horner and Crookston both struck the plaintiff with their fists, and a fight was thereupon precipitated, in which the inspector

also participated. The plaintiff, as a direct result of the blows, suffered a broken jaw and other traumatic injuries.

Plaintiff brought this action against the present appellants, and the servant of each, to recover damages for the injury thus sustained.

At the conclusion of the plaintiff's case in chief, a motion was made to require the plaintiff to elect which of said defendants he would pursue. Plaintiff thereupon dismissed as parties defendant, the servants Thomas A. Crookston and Holly S. Horner. The cause then proceeded against the two principals who were engaged in the joint adventure: Dixie-Ohio Express Co. and Anthony J. Crookston, and ultimately resulted in a verdict against both in the sum of $5,000, upon which judgment was rendered.

The questions for consideration arise by reason of specifications of error urged by the appellants, the judgment debtors in the court below. Those questions are:

1. Did the trial court err in its refusal to direct a verdict for the defendants?

2. Does the petition state a cause of action?

3. Did the court err in admitting X-ray films of the plaintiff's jaw?

4. Did the court err in overruling the defendants' motion to elect, made before and during the presentation of plaintiff's case in chief?

5. Was there error in the general charge?

The Supreme Court of Ohio in a well considered opinion has ruled that:

"1. An employer is liable for the willful or malicious acts of his servant done in the course of the servant's employment.

"2. When the act complained of may or may not be, from its nature, in the course of the servant's employment, and this depends upon the real motive or purpose of the servant in doing the act, it is a question for the jury to determine upon a consideration of all the circumstances adduced in evidence.

"3. In a suit against an employer for an injury caused by the wrongful act of his servant, and the evidence is such, that different minds may fairly draw different conclusions from it as to the real motive and purpose of the servant in doing an act, apparently within the course of his employment, it should be left to the jury to determine the question, under proper instructions as to the law; and it is error

for the court, in such case, to direct a verdict for the defendant."

The Nelson Business College Co v Lloyd, 60 Oh St 448; 46 L. R. A. 314; 71 Am St Rep 729; 54 N E 471; 6 Am Neg Rep 309.

Concededly, if the agent acts within the course and scope of his employment, his master is liable. If his acts are tainted and purely selfish motives and actuated wholly by malice and ill will toward the injured person, he cannot be said to act within the course and scope of his employment.

The facts reveal a situation wherein the two principal defendants were engaged in a joint adventure. Each one was represented by a servant. A truck in which both principals were interested, was detained at the filling station over which the plaintiff had charge. Both servants were desirous of getting the truck under way. One of the conditions precedent to the start was the obtaining of a certificate. It could be obtained at the filling station.

Can a reasonable inference be drawn from the fact that, when both servants went to the very place where the certificate must be obtained, their trip was on a mission which was fairly and materially incident to the business of their respective masters? Might it be reasonable to infer that their mission and subsequent conduct, although a mistake and ill-advised, still was done to further their masters' interests? Is it reasonable to infer that their conduct was the result of an impulse or emotion which naturally grew out of or was incident to an attempt to secure the certificate of inspection? If so, it is reasonable to infer that they were acting within the course and scope of their employment.

2 Mechem on Agency (2d ed.), §1960.

Certainly, from the evidence in this case, impartial and reasonable minds could arrive at different conclusions. An impartial and reasonable mind could arrive at the conclusion that the assault and battery arose wholly from an external, independent and personal motive on the part of the servants to do the acts upon their own account. Likewise, impartial and reasonable minds could arrive at the conclusion that their acts were within the course and scope of their employment, and in furtherance of the master's business.

The argument is made by the appellant company that it was not a part of Horner's duties to assist in obtaining the insurance certificate. The record reveals ample evidence from which the conclusion could be drawn that he had actual or implied authority to negotiate the matter for the company. He had general supervision of the loading of trucks, the making of arrangements for their departure, and the inspection of the insurance certificates; and the load could not start on its journey until he ordered.

Certainly it was a part of Crookston's duties to obtain the insurance certificates. And if he, while acting within the scope of his employment, injured ▮▮ the plaintiff, both his master and the defendant Dixie-Ohio Express Co. would be liable for his acts, inasmuch as his master was engaged in a joint adventure with said defendant company. And for the same reason would both defendants be liable for the acts of Horner while acting within the course of his employment.

Leonard, Admrx. v Kreider, a minor, 51 Oh Ap 474; 20 Abs 166.

Wenzlanski et al v Allen, Admr, et al, 51 Oh Ap 482; 21 Abs 137.

The trial court charged the jury "that a master or employer is liable to respond in damages for the acts of his servant or employee if those acts occur during the time of the employment of the servant or employee and while the servant or employee is acting within the scope of his employment in the furtherance of the master's business."

The jury found, under that instruction, that the acts of the servants were committed during the time of the employment of the servants and while they were acting within the scope of their employment in furtherance of their masters' business, and we are unanimously of the opinion that such finding is not manifestly against the weight of the evidence.

In view of the foregoing, the question raised in the first specification of error must be answered in the negative.

The claim is made that the servants were acting in self-defense at the time of the injury. The evidence justifies the verdict of the jury in this respect.

The claim is further made by the appellants that the trial judge erred in his general charge to the jury.

We are of the opinion that the language used in the general charge accurately and sufficiently covered the issues involved in the case.

The trial court in a general way followed the principles so ably pronounced in Nelson Business College Co v Lloyd, supra. And after an analysis of the entire general charge, coupled with the propositions of law given before the argument of counsel, we are persuaded that no prejudicial error exists in that respect.

The courts of Ohio have ruled repeatedly on the question of the election of defendants, and without extended discussion of the subject, we hold that the pleadings and facts in the instant case reveal no error in not requiring an election to be made prior to the conclusion of plaintiff's case in chief.

French v Construction Co., 76 Oh St 509, at p 518.

Goldberg v Jordan, 130 Oh St 1.

Additional errors urged by the appellants, orally and by brief, are not sustained by the pleadings and the record so as to constitute prejudicial error.

The judgment will be affirmed.

All of the issues involved in case No. 2855 in this court, same title as this case, having been disposed of herein, the appeal in that case will be dismissed.

STEVENS, PJ, and WASHBURN, J, concur in judgment.